# BLACK et al. vs. THORNTON.

1. If a voluntary deed for slaves be signed, sealed and attested, but not then delivered by the donor to the donee, or to any other person for him, and if, before the delivery of such deed, a third person purchase said property from the Sheriff, who had levied on it as the property of the donor, advertised and exposed it legally to public sale, or from the grantor for a valuable consideration, such purchaser acquires a legal title to the slaves, as against the volunteers to whom the deed was delivered after such purchase, whether the purchaser had notice of such previous signing, sealing and attestation of the voluntary deed or not. And if there be doubt as to the time of the delivery, it is the province of the jury to determine whether it occurred before or after the sale for value.

2. It is not error in the Court, after having charged the jury as to a presumption arising under a given state of facts, not amounting to positive proof of the thing presumed, to add "but this presumption is not conclusive. It may be rebutted by evidence, and it is for you to determine, whether or not it has been rebutted."

3. A mere rumor or vague report brought to the knowledge of a purchaser for valuable consideration, at or before the purchase, that there was an outstanding claim, or conveyance, or by, or to, whom made, is not such notice as will vitiate his title in favor of a volunteer.

4. It is not error in the Court to charge the Jury "that if they believe one of the witnesses sworn was called on by the parties at the time of the transaction, to bear witness to it, or was deliberately consulted by them, such circumstances are to be considered by the Jury in favor of giving special weight to his evidence; but such circumstances are not conclusive, they may be overborne in the minds of the Jury by others."

5. A party claiming title to property by deed or gift, is denominated a volunteer, and a subsequent purchaser for a valuable consideration, without notice of the voluntary conveyance, is preferred in law to the volunteer; but if he had notice before he purchased, the volunteer will be preferred over him.

7. In polling a Jury, the better course is to begin with a distinct reading of the verdict returned, calling their attention to it, and then (calling them seriatim by name,) to propound to each the question, "what say you, Mr. Juror, is this your verdict, or is it not?" But where there is a genuine verdict for the defendant, the question, "Mr. Juror, do you find for the plaintiff, or for the defendant?" is equivalent, and the polling legal.

8. The jury being polled in this form, each Juror answered, that he found for the defendant, but some four or five added, each for himself, to the response, that "he was not satisfied," or "not fully satisfied," or said "he was not fully satisfied, but with the lights before him, found for the defendant." Held, 1st. That freedom from doubt, especially where the finding was for the defendant, is not required. 2d. That a verdict so rendered, is unanimous and legal.

---

POLLING OF JURY. "In criminal cases the privilege of polling the jury, is a legal right in the defendant, and it is error to refuse it." Tilton v. State, 52 Ga. 478 (2). * * * "The cases in this court.where the privilege has been said to depend on the discretion of the court, were all civil cases. 6 Georgia, 464; 22 Ibid. 431; 41 Ibid. 465; 31 Ibid. 661." Id. 479. "The practice is not uniform in the United States on polling the jury. In some States it is not allowed, in others it rests in the discretion of the judge, and at common law it seems to have existed in another form. 2 Hale's P. C., 299; Bishop's Crim. Pro., 830; 1 Chitty, 635. In this State the right is recognized, the object being to ascertain before the public and prisoner whether the verdict agreed on in the jury room is still the unanimous verdict of the jury. 31 Ga. 611-

9. *Held*, That under the circumstances of this case, a conversation between the donor and defendant in execution; his son who was the father of the donees, in the voluntary conveyance, (under age at its date,) and who took himself, a usufruct in the property by the terms of the deed; the purchaser at sheriff's sale, and a person, specially selected as adviser or witness, occurring before the sale, by the sheriff, and referring to matters now in issue, was properly received in evidence, and considered by the Jury in determining the question of notice of the prior conveyance, affecting the purchaser.

Trover, in Elbert Superior Court.    Tried before his Honor, Judge THOMAS, at the September Term, 1860.

Lemuel Black and his wife, Priscilla H. Black, formerly Priscilla H. Thornton, and Willis Scroggins and his wife, Martha E. Scroggins, formerly Martha E. Thornton, instituted an action of trover against William T. Thornton, to recover damages for the alleged conversion of the following negro slaves, to wit: Sina, nineteen years of age, and her two children, one about two years of age and the other an infant; Jacob, about fifteen years of age; Seaborn, thirteen years of age; Robin, eleven years of age; Louisianna, nine years of age; Benaja, seven years of age; and Henry, *alias* Bose, eighteen years of age; which negroes the plaintiffs allege are their property, and are of the aggregate value of fifty-one hundred dollars.

The defendant, by his plea, denied the title of the plaintiffs, and also alleged that their right of action (if any) was barred by the statute of limitations.

On the trial of the case in the Court below, the following evidence was adduced:

### Evidence for the Plaintiffs.

An original deed of gift of which the following is a copy, to wit:

"GEORGIA, ELBERT COUNTY:

"Know all men by these presents, that I, Daniel Thornton, of the State and county aforesaid, do for the good will and affection that I have for my granddaughters, Martha E. Thornton, and Priscilla H. Thornton (daughters of William D. Thornton), give to them a certain negro woman named Ann, and her child Sina, and their increase; the said negroes to be

661; Campbell & Jones *v.* Murray, August 7, 1878. not yet reported. **The question is, did the juror still assent thereto?"** Hill *v.* State, 64 Ga. 465-6.

"**For a single juror,** when a poll of the jury has been demanded, and eleven have answered that the verdict rendered is theirs, **who has by inadvertence been overlooked until the jury have been discharged, to be called and polled,** before he has left the presence of the court or mingled with the bystanders, is **so slight an irregularity as not to call**

used by the said William D. Thornton and his wife for their benefit, until the said Martha E. and Priscilla H. Thornton become of age.

"In testimony whereof, I have hereunto set my hand and affixed my seal, this 17th day of November, 1838.

"Signed in the presence of ELIJAH JONES and IBRA H. CLEVELAND.

his
"DANIEL X THORNTON."
mark.

Ibra H. Cleveland testified: That said deed of gift was signed in his presence, and attested by himself and Elijah Jones as witnesses; that there was no one present but the witnesses to the deed and the maker; that he saw no delivery of the deed; but afterwards and before the death of the maker, he saw the deed in the hands of Sarah Thornton, the mother of Martha E. and Priscilla H. Thornton; that the deed was written by Joseph Blackwell as the maker said, and that it was signed on the day it bears date; that the witness is the uncle of the female plaintiffs; that after the death of Daniel Thornton, and in the lifetime of Sarah Thornton, Reuben Thornton told witness, that he was willing for the children, Martha E. and Priscilla H., to have the negroes if they belonged to them.

Thomas J. Heard testified: That Sarah Thornton, wife of William D. Thornton, and mother of the female plaintiffs, handed him the deed of gift, in July, 1845, to give to the clerk, Mr. Christian, to be recorded, which witness did; that witness did not take the deed from the office, and did not see it again until a former trial of this case; that William D. Thornton by reputation is dead, and probably died before the commencement of this suit.

Jacob M. Cleveland testified: That the negro woman Ann was born the property of witness' father; that on the first Tuesday in January, 1829, the witness, as administrator of his father's estate, sold Ann at administrator's sale; that at the sale Sarah Thornton, wife of William D. Thornton, who was then unmarried, bought said negro woman Ann; after the intermarriage of Sarah and William D. Thornton, he owned the negro for six or seven years, and mortgaged her to William A. Beck, or Beck & Clark; she was sold under the mortgage on the 25th of December, 1836, and bought by Beck,

**for the granting of a new trial."** Russell v. State, 68 Ga. 785 (1). The question 'is this or not your verdict,' upheld. Id. 786-7.

"Where **in a criminal case** the jury returns a verdict of guilty, the accused may, as matter of right, demand that the jury be polled before the verdict is recorded. In response to such demand, made at the proper

who shortly thereafter sold her to Daniel Thornton; after old Daniel Thornton bought the negro, the witness saw her and the negro Sina in possession of William D. Thornton; that Sina was born in the possession of William D. Thornton, and the negroes remained in his possession from 1836, or January, 1837, until they were sold by the sheriff, during all of which time William D. Thornton lived on land of his father's and cropped with him; old man Thornton had several negroes, whilst William D. had none in his possession but Ann and Sina; Martha E. Thornton was born in 1831, and Priscilla was born about the last of the year 1834, or the first of 1835; Lemuel Black and Priscilla H. Thornton intermarried in the latter part of 1837, or the first of 1838, and before the commencement of this suit.

John Adams testified: That he knew the negroes Ann and Sina in the possession of Reuben Thornton; Ann was Sina's mother; he also knew Jacob, and Seaborn, and Bose, all of whom were Ann's children; having heard some talk of the deed of gift to the female plaintiffs for the negroes, the witness raised a conversation with Reuben Thornton on the subject, sometime in the year 1852, whilst the witness was overseeing for him; in the conversation Reuben Thornton told the witness that there was such a deed of gift, and that he knew it before he bought the negroes; witness then said, if that was the case the children (meaning the female plaintiffs), would gain the negroes, to which Reuben Thornton replied, not in his lifetime; the witness lived with Reuben Thornton three years, to wit: in 1844, 1845, and again in 1851 or 1852; the witness did not swear on the former trial of this case that the conversation with Reuben Thornton occurred in 1847, or 1848, or 1849; nothing else of importance occurred in the conversation about the deed of gift; Reuben Thornton did not say that the negroes would be his as long as he lived, and when he was dead and gone he did not care much about it; no such expression was used; he did not tell witness how, or when, or from whom, he obtained a knowledge of the existence of the deed of gift, except that he knew it before he bought the negroes; it has been seven or eight years since the hearing of the witness became bad like it is now; it first began to fail when he was ten years old; resulting from a rising in his ear; he is now sixty years old; his hearing was so that he could understand common conver-

time, each juror should be questioned individually and separately as to his agreement to the verdict; and it is not sufficient to question the jurors collectively and in concert, although each and all express their assent to the verdict." Blankinship v. State, 112 Ga. 402 (1), 404. And see Campbell v. Murray, 62 Ga. 86.

"A motion for a mistrial was not the appropriate remedy when, upon a poll of the jury, the party against whom the verdict was ren-

sation last spring, and ten years ago, and twenty years ago, and thirty years ago; he could hear common conversation when he had the talk about the deed of gift with Reuben Thornton; he does not know that he swore on the former trial that his hearing became bad twenty years ago for the first time; witness and Reuben parted like brothers, and were perfectly friendly; there never was any difficulty between them; witness once sued him in Elbert Superior Court about his wages as overseer, the first time he served him as such, and had the cost to pay; he does not recollect the date of the suit.

Thomas J. Adams testified: That he knew the negro woman Ann in Reuben Thornton's possession, together with her children, Sina, Jacob, Robin, Seaborn, Louanna and Bose, who was called by another name not recollected by witness; Sina had two children, one of which could walk, and the other was a sucking infant when he lived with William T. Thornton; witness never saw any of the negroes in possession of Wm. T. Thornton, except Sina and her children; witness lived with Reuben Thornton in the year 1852 or 1853; in the latter part of the year, witness told him that he had heard Mrs. Thornton, wife of William D. Thornton, say that she had a deed of gift for these negroes, and he asked Reuben Thornton if it was so, to which he replied, that he knew there was such a deed, and that he knew it before he bought the negroes; witness' reason for asking Reuben Thornton about the deed was, that he heard Mrs. Thornton say she had such a deed; this is the reason given on a former trial; witness was hauling and ginning cotton at the time, and does not think he swore on a former trial that he was hauling corn; Scroggins' name was not mentioned in the conversation, and witness does not recollect giving as a reason for asking Reuben Thornton about the deed, that he had heard that Scroggins was about coming up to assert his claim; Reuben Thornton said he knew of the deed before he bought the negroes, but that it would not pester him in his lifetime, and when he was dead it would not pester him; witness is the son of John Adams, the other witness.

Plaintiffs then proved the value of the negroes and their hire.

The marriage of Martha E. Thornton and William Scroggins was admitted by counsel for defendant.

The will of Reuben Thornton was read in evidence, from

dered contended that it appeared from the answers of one of the jurors that it was not his verdict." Macon Ry. & Light Co. v. Barnes, 121 Ga. 444 (5), 449.

**VOLUNTEER, INNOCENT PURCHASER FROM.** "In a case arising between a volunteer and a subsequent purchaser for value, without notice, it is **not error** in the court to **charge** the jury that the **subsequent sale of the property was a circumstance to be considered** by them

which it appeared that Ben, a negro, son of Ann, was willed to Benjamin Thornton, a brother of Reuben Thornton, and that Henry, *alias* Bose,. was bequeathed to Mrs. Thornton,° widow of testator.

It was admitted that by some arrangement the defendant William T. Thornton, took Henry.

### Evidence for Defendant.

An original bill of sale duly proved from Daniel Thornton to Reuben Thornton, for the negroes Ann, Sina and Henry, dated 27th of April, 1841.

An original *fi. fa.* issued from Elbert Superior Court in favor of William B. Davis and John C. Douglass, against William D. Thornton, Daniel Thornton and James Clark, dated October 1st, 1840, and founded on a judgment obtained the 25th of September, 1840.

On the *fi. fa.* was a levy on the negro Ann and Henry, as the property of Daniel Thornton, pointed out by him, and dated the 10th of December, 1840.

A copy of the "News and Planter's Gazette," a newspaper published in Washington, Wilkes county, Georgia, dated the 1st of January, 1841, showing an advertisement of said negroes, Ann and Henry, for sale by the sheriff of Elbert county, under the levy and *fi. fa.* aforesaid, on the first Tuesday in February, 1841.

There was an entry on the *fi. fa.,* showing that the property was sold pursuant to the levy to Reuben Thornton for four hundred and twenty dollars. The entry was dated 17th of March, 1841. The entry and the levy were both signed by William H. Adams, sheriff. The *fi. fa.* also showed a receipt of the plaintiff's attorney for $2.99 $\frac{16}{10}$, and the tax and jury fee, and also of the clerk for his cost.

An original bill of sale from William H. Adams, sheriff, to Reuben Thornton, in which the *fi. fa.,* levy, advertisement and sale aforesaid, were all recited, and the negroes conveyed to Reuben Thornton, the purchaser.

William H. Adams testified: That he was sheriff of Elbert county at the time of the levy and sale, and that all the proceedings shown by the *fi. fa.,* levy, advertisement and bill of sale, occurred as shown by the papers; that he speaks from the papers and not from his memory, but is satisfied

in determining whether or not the voluntary deed was made with intent to defraud. Nor was it error in the Court to charge that the circumstance is not conclusive, but that it may be rebutted by evidence showing that the voluntary conveyance was bona fide. The cases of Fleming *v.* Townsend, Fowler *v.* Waldrip, Harper *v.* Scott, Clayton *v.* Brown, Brown et al. *v.* Burke, and Black et al. *v* Thornton, reviewed, shown to be consistent, and re-affirmed." Howard *v.* Snelling, 32 Ga. 195 (3, 4), 208.

that the facts and proceedings occurred, because it was his invariable custom whilst sheriff, to see that all his papers and entries exhibited the truth.

Plaintiff's counsel moved to rule out this testimony of William H. Adams, on the ground, that although he seemed satisfied that the facts existed as he testified, yet his assurance of their truth was bottomed on the papers alone, as he had no recollection on the subject at all.

The objection and motion were overruled.

Jeremiah S. Warner testified: That he recollected the sale by Sheriff Adams of a negro woman as the property of Daniel Thornton, but could not locate the time; if he had spoken from memory, he would not have placed the time so far back as the papers showed it; on the day of, and previous to the sale of the negroes by the sheriff, Reuben Thornton called on witness to hear a conversation between him and Daniel Thornton and William D. Thornton, in which Reuben stated that it was rumored that old man Daniel Thornton had given the negroes levied on to William D. Thornton's children, and if that was true, he would have nothing to do with the purchase; that if there was to be any afterclap, he wanted nothing to do with the property; that if the property was sound, good property, he was willing to buy it, otherwise he would not. To this Daniel Thornton and William D. Thornton both replied, that there was nothing of any such gift; the old man said, he had intended to give the negroes to William D., or William D.'s children, but that he could not do so; that William D. had ruined him, and caused him to pay out more money than the property amounted to; witness remarked, that if there had been a conveyance by will, it could be revoked, if by deed, it could not be revoked; in answer to which, all protested that there was no conveyance, and insisted on Reuben's buying the negroes, as he had part of the family, and they preferred that he should own them, rather than any one out of the family; this conversation was but a little while before the negroes were put up to sell; the witness does not recollect when old man Daniel Thornton died; his wife outlived him, and was named Sarah, as was also William D.'s wife.

The plaintiff's counsel objected to all that part of Warner's testimony relating to the sayings of Reuben, Daniel and William D. Thornton, and the witness.

The objection was overruled, and the testimony admitted.

The testimony of John Adams and Thomas J. Adams, as taken down by the Court on a former trial was read, for the purpose of showing, as it did, that there was a conflict between their testimony, given on a former trial of this case, and that given on the last trial, especially as to dates of conversations, identity of expressions, etc., etc.

The defendant then read in evidence the record of a case in Elbert Superior Court, in which John Adams was plaintiff, and Reuben Thornton was defendant, commenced 19th of October, 1847, and judgment against the plaintiff for $36.-56¾ cost, dated 26th of September, 1848. The only cause of action alleged in said case was, that the plaintiff, Adams, had given to the said Reuben his note for forty dollars, to indemnify said Reuben for going security for the son of said Adams to one Norman, and that Adams had paid said note to said Reuben, when in fact his said son had paid said Norman.

### Evidence for Plaintiffs in Rebuttal.

The original writ, note and judgment, from which the execution under which Ann and Henry were sold, issued, from which it appeared, that the note sued on was dated the 19th of December, 1838, and the judgment, dated the 25th of September, 1840.

The will of the old man Daniel Thornton, bequeathing to his wife, Sarah, the land on which he then lived, during her life or widowhood, then to William D. Thornton, as trustee for his children, to be divided at his death. All the remainder of his property was bequeathed to his wife for life or during widowhood; then to be divided into equal shares; one to be held by said William D., as trustee for his children, to be equally divided amongst them at his death; the other share to be held by William Bell, as trustee for his wife during her lifetime, and then to her children equally.

It was admitted that old man Daniel Thornton died in 1847; that his wife survived him several years, and that she then had the land, and four or five negroes, household and kitchen furniture, etc., which came from her husband's estate.

The defendant then introduced the inventory of old man

Thornton's estate, showing that his personal estate was appraised on the 24th of April, 1846, at the aggregate sum of $3,909.22, including in the appraisement nine negroes.

The evidence being closed on both sides, the presiding Judge charged the jury as follows:

"The plaintiffs, Black and his wife and Scroggins and his wife, claim the negroes in controversy under a deed of gift alleged to have been made by Daniel Thornton on the 17th of November, 1838. The first point of inquiry is, did Daniel Thornton own the slaves Ann and her child Sina, at the date of the deed? If he did, he had a right to convey the slaves and their increase by deed of gift. The next point is, are Priscilla H. Black and Martha E. Scroggins, the Priscilla H. Thornton and Martha E. Thornton mentioned in the deed? If so, they and their husbands are entitled to assert in a Court of Justice whatever right the said females have under the deed of gift. The foundation of the plaintiff's case, is the deed of gift, which has been admitted in evidence for your consideration. Is that deed genuine, and was it made by Daniel Thornton, as it purports to be, and at the date thereof? If so, its effect in law is to convey such an estate to the two daughters, as they can not take, or sue for, until both of them become of the lawful age of twenty-one years; I therefore, further charge you as matter of law, arising from this paper, purporting to be a deed of gift, that the statute of limitations would not run against either of the daughters, until both of them are of the lawful age of twenty-one years. Therefore, if you believe that this action was brought within four years after the younger daughter became of age, neither of the daughters are barred of their rights by lapse of time. The next point to be considered is, does the defendant hold the negroes in controversy under his father's will, and did he, the defendant, convert them to his own use at any time within four years before the bringing of this suit? If the defendant sold the negroes, or if he worked them and used them as his own, this would be evidence of a conversion of them to his own use. If he worked the negro Sina as his own, and her children were in his possession, that would be evidence of a conversion of her and her children also, and these evidences of conversion would be sufficient in law, if there was no other evidence to controvert it. Now, does the evidence show all these points to exist in favor of the plaintiff according to the

law as already stated to you by the Court? If so, you ought to find for the plaintiffs the value of the slaves, with reasonable hire, according to the evidence, for the time the defendant has had the slaves in his possession, and since he sold them, if you believe he sold them, unless he has shown some lawful grounds to defeat the plaintiffs claim, and of this, that is, whether the defendant has shown any such lawful grounds, you will next inquire. The defendant contends, that the deed of gift, if it ever existed, was not delivered to the parties to whom it conveyed the property, or to either of them, until after it was sold by the sheriff as the property of Daniel Thornton, and until after Daniel Thornton had conveyed it to Reuben Thornton. The law on this point is, that a deed of gift is of no effect or validity until it is delivered, either to the parties in interest, or to some one of them, or to some one else for them. It conveys property or rights only from the time of its delivery, and not from the time of its date; therefore, if you believe from the evidence, that the sale was made by Sheriff Adams, or by Daniel Thornton to Reuben Thornton, or by either of them, and that such sale was made before the deed was delivered by the maker, Daniel Thornton, to the parties in interest, or some one of them, or to some one else for them, then the plaintiffs can not recover in this case, whether Reuben Thornton had notice of the deed or not. But the truth of this, as well as of every other fact in the case, is a matter for your consideration. The simple fact that the word delivery is not used in the deed, does not invalidate it. You must decide from the evidence whether it was delivered or not. The fact that it comes here into Court in the possession of a party interested under it, is evidence that it was delivered. It is important, however, to decide in this case, whether the deed was delivered before or after the alleged sheriff's sale. Now, the jury must get at that fact by the circumstances in the case which bear on that point. What was the purpose of the deed? How far apart did the donor and donees live? When was it first found in the possession of any party interested under it? Look to these and all other circumstances in evidence going to show an early or a late delivery. If the voluntary deed from Daniel Thornton, and on which the title of the plaintiffs occurred, was found in the custody of Sarah Thornton, wife of William D. Thornton, who took an interest under the same, it is to be presumed that

the deed was duly delivered, and in immediate execution of
the purpose for which it was made. This presumption is not
conclusive, it may be rebutted, and it is for you to say, from
all the evidence bearing on the point of the time of delivery,
whether it has been rebutted. If it was delivered to W. D.
Thornton or his wife, or to either of his daughters named in
it, that would be a good delivery as to all the parties benefi-
cially interested under the deed of gift. The next ground on
which the defendant resists a recovery by the plaintiffs is this:
that even if Daniel Thornton did convey to plaintiffs the prop-
erty in dispute, in the year 1838, and even if the deed was
then delivered, still, if Reuben Thornton, for a valuable con-
sideration, without notice of the deed of gift, he, Reuben
Thornton, by such subsequent purchase took a good title to
the negroes in dispute. These are the positions contended
for by counsel for the defendant. The law on this point is
this: when a party takes or claims property under a deed of
gift, he or she is what the law calls a volunteer, that is to say,
they paid nothing for the thing they claim.

Such a party, that is to say a volunteer, must yield to a
party who claims under a younger or subsequent conveyance,
for a valuable consideration without notice of the prior claim.
If he had notice of the prior deed of gift, then the law does
not require the volunteer to yield to him. Notice may be
either actual or constructive. If the party claiming under a
deed of gift, records it, or it is recorded according to law, this
is constructive notice, and sufficient notice. But there is no
evidence that Reuben Thornton had such notice, for there is
no evidence that this deed of gift was recorded according to
law? It appears from the clerk's entry on the back of it
that it was recorded, but not that it was recorded according
to law. Actual notice is actual information conveyed to the
party personally of the existence of the deed of gift. The
question for you is, did Reuben Thornton have this actual no-
tice? To show that this notice was received by Reuben
Thornton, the plaintiffs introduce the testimony of John
Adams and Thomas J. Adams, and to show the contrary, the
defendant introduces the testimony of Jeremiah S. Warren.
It is for the jury to weigh this evidence, and to determine
whether there is a conflict between the Adams' on the one
hand, and Warren on the other. It is your duty to reconcile
the testimony of these witnesses with each other, so as to

make the whole stand if you can do so.. There is nothing in the testimony of the Adams' on the one part, and Warren on the other part, necessarily in conflict; the whole of it may be true. It is for the jury to say whether the conversation testified to by Warren was not itself notice of the voluntary outstanding title relied on by the plaintiffs, or what it did demonstrate. In connection with this matter, the Supreme Court say: "Notwithstanding that conversation, Reuben Thornton may have received reliable information of the existence of this deed of gift." They state this, not to induce you to believe that he did, or did not, receive such reliable and certain information, but only as a reason for correcting one of the errors of this Court. I will here also bring to notice for the consideration of the jury, the presumption against the *bona fides* of the purchase at sheriff's sale, arising from the warrantee deed which Reuben Thornton took from Daniel Thornton to support the title by purchase at the sheriff's sale of these same negroes. But this presumption is not conclusive; it may be rebutted, and it is for the jury to say, whether it is rebutted in the evidence. The actual notice required by law to make invalid a subsequent purchase, must be given at or before such subsequent purchase. No notice given to Reuben Thornton after he purchased would invalidate his purchase. A mere rumor brought to the knowledge of Reuben Thornton, at or before the sale, or a general report that there was an outstanding claim or conveyance without defining the nature of the claim or conveyance, by, and to whom made, etc., is no notice to Reuben Thornton. After considering all the evidence, if you believe Reuben Thornton had actual notice, of the prior deed of gift, and that the defendant took the property by gift or bequest from Reuben Thornton, then the defendant can not defend himself on the ground that his father bought for money without notice. If on the contrary, you believe that Reuben Thornton did not have this actual notice, and that he bought for a valuable consideration, then he took a good title, and his son by gift or bequest from him, would also have a good title. The negroes mentioned in the deed, are only Ann and her child Sina, but if the plaintiffs have made out their claim and right to recover Ann and Sina, according to law and evidence, they have an equal right to recover their natural increase, all of it, that you believe the defendant converted into his own use be-

fore the bringing of this suit. When the testimony is conflicting (if you believe, after looking into it, that any part is conflicting), the jury may consider which is the most natural and probable, and decide accordingly. They should also take into consideration the capacity and intelligence of different witnesses, and if they believe that one of the witnesses was called on by the parties at the time of the transaction, to bear witness to it, or was deliberately consulted by them, such circumstances are for the jury to consider in favor of giving special weight to testimony of such witness. But such circumstances are not conclusive, but may be overborne in the minds of the jury by others. If you can not reconcile the testimony of the Adams' with that of Warren, and should be of the opinion that it is conflicting, then the only issue is, not whether Warren heard what he relates, but also whether the facts stated by him are sufficient to make you believe that the Adams' did not speak truly, or were mistaken in the matter stated by them. The testimony of Warren relative to a conversation between himself, Reuben Thornton, Daniel Thornton and William D. Thornton, was not admitted before you to show the truth of what was stated by any of the parties to that conversation. If it were used for such a purpose, it would be only hearsay as to these plaintiffs. It was admitted only for the purpose of showing the fact, that such a conversation did take place, in order that that fact might be urged in the consideration of the case, and to have such weight as the jury might believe it entitled to. If Reuben Thornton had notice of the prior conveyance, although it was denied by William D. Thornton and Daniel Thornton, still he is bound by the notice, and did not get a good title by his purchase. The jury are to determine whether he had this notice or not, by all the facts of the case. You are to come to your decision from the evidence, and the law given you in charge, and from no other sources. You must understand the Court as expressing no opinion whatever as to the facts; of these you alone must judge. If in your opinion, there is an irreconcilable conflict in the testimony, you must base your decision on the preponderance of evidence. You need not believe any part of it to be true beyond a reasonable doubt, in order to find it true, but you need believe it only to a reasonable certainty."

At the close of the foregoing charge, counsel for the plain-

tiffs requested the Court to charge the jury as follows, that is to say:

"The jury must be satisfied from the circumstances in testimony, that the deed from Daniel Thornton to plaintiffs was made to defraud creditors or purchasers, before they can set it aside, even if there were no notice to Reuben Thornton prior to the sale."

The Court refused so to charge.

Plaintiff's counsel also requested His Honor to charge the jury as follows, to wit:

"Unless the voluntary deed to plaintiffs was fraudulent, it vested in them an interest in the property so soon as it was delivered, which could not be destroyed by any sale made by Daniel Thornton, the maker, or by any officer selling the property as his."

The presiding judge gave this charge with the following qualification, to wit: "The right of the plaintiffs would not be destroyed by the subsequent deed by Daniel Thornton or the sheriff, but the fact, if it be a fact, that Reuben Thornton took such subsequent deeds for a valuable consideration, without notice of the prior deed of gift, would destroy their right to sue him, or any person holding under him, for the property."

The jury came into Court with a verdict "for the defendant."

Before the verdict was received and entered as such, counsel for plaintiffs moved the Court to poll the jury, which motion the Court granted, and the jury were polled.

When the tenth juror was called, and was asked the question: "How do you find, for the plaintiffs or for the defendant?" he answered, "I am not fully satisfied, but I could find no other verdict with the lights before me." The juror was again asked the question, and answered as follows: "I don't know that I can answer that question."

The presiding judge then said to the jury: "The verdict not appearing to be unanimous, you must retire, gentlemen, and bring in a unanimous verdict. I trust, gentlemen, that you will not consider that either the Court or the counsel have detained you thus long, on a matter in which you have no interest, merely to harass you. We are all doing merely our duty which the law compels us to perform. It is my duty to receive no verdict that is not unanimous; and Mr. Har-

man having answered to the question, "How do you find, for the plaintiffs or for the defendant?" "that he don't know that he can answer the question," neither agrees or disagrees to the verdict. The law, though, requires that he agree to it, and he not agreeing, you have nothing to do but to retire to your room, and let him, and others that agree with him, convince you that you are wrong. You must discuss and deliberate. For that purpose you are sent out. Retire, gentlemen, and make up your verdict."

The jury returned the same verdict as before, and at the request of plaintiff's counsel the jury was again polled.

Counsel for plaintiffs requested the Court in polling the jury, to ask each juror whether the verdict was his verdict, and had the approbation of his judgment, which request the Court refused.

Counsel for plaintiff also requested the Court to require each juror to answer for himself, and without reference to what any of his fellows may have answered before him, and to request any juror, who shall say anything about being fully satisfied, to state whether he is fully satisfied with the verdict now. This request was refused by the Court.

In polling the jury the second time, the same form of question was adopted as at first, in answer to which, seven of the jurors said: "for the defendant," one said, "I find for the defendant, but am not fully satisfied with the evidence before us;" one said, "I am not fully satisfied, but with the lights before me, I can find no other verdict but for the defendant;" one said, "I am not fully satisfied that I am right, but I find for the defendant;" one said, "I did not understand you before, I am not fully satisfied, but I find for the defendant;" and one said, "I am not fully satisfied, but with the testimony we had before us, I find for the defendant."

The verdict was then received and entered as the unanimous verdict of the jury.

Counsel for plaintiffs then moved for a new trial of said case on the following grounds:

1st. Because the verdict was not the unanimous verdict of the jury.

2d. Because five of the jurors, when polled, in effect, denied that the verdict was their verdict, and their answers show that the said verdict did not receive the approbation of their judgment.

3d. Because the Court erred in refusing to poll the jury acording to the form of question and requirement, requested by counsel for the plaintiffs as hereinbefore stated.

4th. Because the Court erred in the remarks and instructions which he made and gave to the jury in sending them back to their room after the first polling, and also erred in giving them any instruction at all at that time.

5th. Because the Court erred in allowing the verdict to be entered on the minutes.

6th. Because the Court erred in refusing to charge the jury as requested by counsel for plaintiffs, and adding the qualification to the charge as requested, and hereinbefore set forth.

7th. Because the Court erred in permitting the witness, Jeremiah S. Warren, to testify as to the sayings of Reuben Thornton, Daniel Thornton, William D. Thornton, or himself, as set forth in the brief of the testimony.

8th. Because the Court erred in allowing the *fi. fa.*, the newspaper, and the testimony of William H. Adams, to go to the jury as evidence.

9th. Because the charge of the Court, was contrary to law, and not sustained or authorized by the evidence.

10th. Because the verdict is contrary to law, and contrary to, and not authorized by, the evidence.

11th. Because the verdict is against the weight of evidence.

This motion was overruled, and a new trial refused, and the writ of error is prosecuted in this case to reverse that decision.

VANDUZGER and WASDEN & NELMS, for plaintiffs in error.

HESTER & AKERMAN, for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

This was an action of trover for slaves, tried at the September Term, in 1860, of the Superior Court of Elbert county.

The plaintiffs relied upon a deed of gift from Daniel Thornton, dated 17th November, 1838.

Defendant, who claims under Reuben Thornton, relies

First, upon a sheriff's deed to Reuben Thornton for said slaves, reciting that they were levied upon by virtue of an execution against Daniel Thornton, and others, duly advertised and sold to Reuben Thornton as the highest bidder, on the first Tuesday in February, A. D. 1841. The *fi. fa.* with proper entries of these proceedings, and the advertisement were also in evidence. Secondly, upon a bill of sale, with warranty of title from Daniel Thornton to Reuben Thornton, dated 27th April, A. D., 1841. He deduces title to himself by the last will and testament of his father, the said Reuben Thornton. Such is the documentary title, showing that both parties claim under Daniel Thornton. There was considerable oral evidence to support or invalidate the one title or the other. The plaintiffs rely upon the seniority of their title. Defendant attacks it upon the ground that it was a voluntary conveyance—not delivered at the time of its execution; that there is no evidence when it was delivered, or that it was ever in the possession of either of the grantees, or of any other person than the grantor at any time anterior to the sheriff's sale, at which his testator purchased. He insists that he is entitled to hold the property, under the sheriff's sale, against the plaintiffs, First, because their deed was void for want of delivery. Secondly, because if their deed was actually delivered before the sheriff's sale, he, being a subsequent purchaser for a valuable consideration, without notice of the prior voluntary conveyance, should be preferred in law to the volunteers.

There are sundry exceptions taken to the charge of the Court as delivered, and to the refusal of the Court to give certain charges as requested in writing by plaintiffs' counsel. The charge itself, is given in extenso, and the exceptions set forth in the bill of exceptions.

1. The first error alleged, consists in the charge, that if the jury believed, from the evidence, that the sale was made by the sheriff, or by Daniel Thornton, to Reuben Thornton before the delivery of the deed of gift, by Daniel Thornton, to the parties in interest, or one of them, or to some one else for them, then the plaintiffs can not recover; whether Reuben Thornton had notice of the deed of gift or not; that it was important to determine, in this case, whether the deed was delivered before or after the alleged sheriff's sale, that if the voluntary deed was found in the possession of Sarah

Thornton (wife of Daniel Thornton), who took an interest under it, it is to be presumed that the deed was duly delivered, and in immediate execution of the purpose for which it was made, but that this presumption is not conclusive—may be rebutted—and that it was the province of the jury to say whether or not it had been rebutted, and generally to consider and determine, from the evidence, all the facts involved in this branch of the case.

Such is, in substance, the charge complained of, and we see no error in law contained in it. But it is said the Court assumed, in so charging the jury, that there was evidence before them of a character to rebut that presumption of law, when, in fact, there was none; and that this assumption, by the Court, misled the jury and deprived the plaintiff of the benefit of the legal presumption.

This exception is not well taken. The evidence discloses the fact, that at the time of the signing of the voluntary deed no one of the donees was present, and that it was not delivered to any person for them. This is the evidence of one of the subscribing witnesses, and is unquestionably in rebuttal of the presumption that the deed was delivered in *"immediate"* execution of the purpose, etc.

It raises the contrary presumption, that the donor did not intend immediate delivery, otherwise he would have had one of the donees present to receive the deed, or have delivered it to some other person for them. Again, the facts that the levy, advertisement, and sale by the sheriff (being all official and public acts) had induced no notice of the prior voluntary conveyance at the time of the sale; that at the time of the sheriff's sale, the voluntary deed had not been recorded; that there was no evidence of its having been in the possession of any of the donees, or out of the possession of the donor, until 1845 (four years after the sheriff's sale) were all circumstances proper to be considered and weighed against the presumption of immediate delivery, or of delivery at any time anterior to the sale by the sheriff. Had the Court below failed to give the qualification complained of, injustice would have been done the defendant.

2. The second error complained of is, that the Court, in charging the jury, after calling their attention to "the presumption against the *bona fides,* of the purchase at sheriff's sale, arising from the warranty deed which Reuben Thornton

Black et al, vs. Thornton.

took from Daniel Thornton, to support the title by purchase at sheriff's sale"—added, "but this presumption is not conclusive—{it may be rebutted, and it is for the jury to say whether it is rebutted in the evidence."

It is said that the Court by *this* qualification, "perverted the evidence, misled the jury and encroached upon their province," etc. We are wholly unable to see in this, any perversion, misleading, or encroachment on the part of the Court. Doubtless it was argued in that Court, as here, that the subsequent warranty, obtained by Reuben Thornton, was no evidence of *mala fides*. Courts should always, in charging juries, as to presumptions, be careful to inform them that they are not conclusive, that they may be rebutted, lest they should infer the contrary. A mind educated in the law would not require to be so guarded, but one not so educated, without the qualification, would very probably be misled by the proposition. The Court did not tell the jury that there was sufficient rebutting evidence, or any rebutting evidence; but simply that the presumption urged by plaintiff's counsel, might be rebutted by evidence, and referred the question to them. There is no error in this.

3. The third assignment of error in the charge, is, that the Court said to the jury: "A mere rumor, brought to the knowledge of Reuben Thornton, at or before the sale, or general report, that there was an outstanding claim or conveyance; without defining what sort of claim or conveyance, to whom, or by whom, etc., is not notice to Reuben Thornton."

The law is here correctly stated. The proposition is a simple truism, and the objection to the annunciation of it, that it was calculated to make the impression on the minds of jurors, that Reuben Thornton had no other notice, is forced and illogical.

4. The fourth assignment of error is, that the Court charged the jury, "that if they believed that one of the witnesses was called on, by the parties, at the time of the transaction, to bear witness to it, or was deliberately consulted by them, such circumstances are to be considered by the jury, in favor of giving it special weight, but such circumstances are not conclusive, but may be overborne in the minds of the jury by others." This is simply suggestive to the jury, that they may well consider, whether or not, the fact of a person being

specially called on by the parties to bear witness of what transpired between, or being specially consulted by them, was calculated to impress more strongly on his mind, what did transpire, and whether or not his recollection of the facts was more reliable than if he had been casually a witness. It is a general rule, very generally expressed, to aid them in weighing evidence not applied to any one witness—and not, therefore, calculated to create an improper bias. If the jury applied it to the testimony of any one witness, that there was a case for the rule. If they did not, they were not misled.

5. The next error assigned, is in the following charge to the jury: "When a party takes or claims property under a deed of gift, he or she is what the law calls a volunteer; that is to say, they paid nothing for what they claim. Such a party (that is to say a volunteer) must yield to a party who claims under a younger, or subsequent conveyance for a valuable consideration, without notice of the prior claim. If he had notice of the prior deed of gift, then the law does not require the volunteer to yield to him."

This charge, as affirmatory of a general rule of law, applicable to the case at bar, might readily be sustained by numerous authorities, but it is sufficient to adduce four decided cases, which were binding upon the Court below, viz.: *Fleming vs. Townsend,* 6 *Geo. Rep.* 103. *Fowler vs. Waldrip,* 10 *Geo. Rep.* 350. *Harper vs. Scott,* 12 *Geo. Rep.* 125. *Jordan vs. Pollock,* 14 *Geo. Rep.* 145.

We now add another on the point:

Exception is made to the refusal of the Court to give certain charges, asked for by the plaintiff's counsel. These are not set forth in the exceptions, but we have referred to them as elsewhere stated, and believing that they could not have been given in consistency with other portions of the charge, which we have already reviewed and approved, and would probably have made on the minds of the jurors, the erroneous impression, that it was incumbent on the defendant to adduce proof of fraud in the making of the voluntary conveyance, other than the presumptive evidence furnished by the subsequent sale, for a valuable consideration, to a *bona fide* purchaser, without notice of the prior voluntary conveyance. We overrule this exception.

7. When the verdict was returned and read, plaintiffs' counsel

Black et al, vs. Thornton.

asked that the jury be polled, and this was done. One of the jury answering that he could not say, whether he found for plaintiff or defendant, the Court declined to receive the verdict, and remanded them to their room.

They came a second time into Court with the same verdict, and were again polled. Exception is taken to the manner in which the question was propounded to each juror, viz.: "Do you find for the plaintiffs or the defendant?" The better form of question would be (following the reading of the verdict), "What say you, Mr. Juror, is that, or is it not, your verdict?" But as there is no complaint in this case, which does not go to the whole verdict, we think the question, as put, equivalent, and therefore overrule the exception.

8. But it is further excepted that the motion for a new trial should have been sustained, and the verdict set aside, on the ground that the answers made on the polling of the jury, show that the verdict was not unanimous.

The greater number of the jury answered simply that they found for the defendant.

Some four or five added, either "that they were not satisfied," or "that they were not *fully* satisfied," or said, "that they were not satisfied, but with the lights before them, they found for the defendant."

They all, however, did say that *"they found for the defendant,"* which was the verdict read in the Court. Is it requisite that to sustain, a verdict, that juror should be wholly free from doubt, should be *"fully satisfied with it?"* If so, what shall become of cases turning upon a preponderance of evidence? Where the preponderance is not great, shall freedom from doubt be exacted? Are such cases never to be decided?

In this case the jury pursued the course proper in the absence of clear and satisfactory evidence; they left the parties as they found them; they conformed to the ancient maxim of the law, *"portior est conditio defendentis."* The verdict was properly received and recorded.

9. It is objected that the Court below erred in admitting the evidence of Jeremiah S. Warren, detailing the conversation between Daniel Thornton, William D. Thornton and Reuben Thornton, relative to a prior voluntary conveyance of this property, and occurring immediately preceding the sheriff's sale. Both parties claim under Daniel Thornton.

William D. Thornton was the father and natural guardian of the grantees (in the voluntary conveyance), then under age, and took himself a usufruct for a time in the property, and was therefore the person to whom such a conveyance, if ever perfected, might naturally be expected to be delivered. Reuben Thornton being urged to buy the property at the impending sheriff's sale, having heard a rumor that Daniel Thornton had previously conveyed it to somebody, or there was an outstanding title, in order to satisfy himself, goes to the two persons, most likely to be informed, taking with him a witness, and asks information. Under all the circumstances, we think this evidence was properly admitted, if for no other purpose, to throw light upon the question of notice, *vel non,* to the second purchaser, of the prior voluntary conveyance.

10. The only remaining exception is, that the Court erred in refusing a new trial, on the ground that the verdict was contrary to evidence, and to the weight of evidence. We can not say that we are dissatisfied with this verdict. It is certainly not "strongly and decidedly against the weight of evidence." It concurs with a previous verdict of a special jury.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.