61178. DEPARTMENT OF BANKING & FINANCE OF THE STATE OF GEORGIA v. INDEPENDENT INSURANCE AGENTS OF GEORGIA, INC. et al.

CARLEY, Judge.

The Citizens & Southern Bank of Cobb County (C&S) is a state bank with its principal office located in Austell, Georgia, a municipality with a population of less than 5,000 according to the 1970 census. In April of 1979 C&S applied to the Department of Banking and Finance (Department) for approval to purchase 100% of the outstanding capital stock of Pledger Insurance Agency, Inc.

(Pledger), a general insurance agency with its office in Austell. C&S also applied for the Department's approval to operate Pledger as a general insurance agency. In May of 1979, at the suggestion of the Department's Deputy Commissioner, C&S amended its application to request approval to operate Pledger through a wholly owned subsidiary which would purchase Pledger's assets and continue to do business under the Pledger tradename. The Department approved the amended application and authorized C&S to form a wholly owned subsidiary, Suburban Agency, Inc. (Suburban), and to operate Suburban as a general insurance agency. Suburban was formed and C&S purchased 100% of Suburban's capital stock. Suburban purchased Pledger's assets and commenced to do business as a general insurance agency selling all lines of insurance.

Pursuant to Code Ann. § 41A-401 appellees filed a petition for judicial review of the Department's action with reference to the approval of the creation and operation of Suburban. The individual appellees are licensed independent insurance agents doing business in Cobb County. The corporate appellee, Independent Insurance Agents of Georgia, is a professional association of approximately 5000 licensed independent insurance agents. The appellees, alleging they were "affected" by the Department's action in approving C&S's amended application to create Suburban, sought to have that action held unlawful and set aside. The trial court made extensive findings of fact and conclusions of law, the essence of which was as follows: "... State banks in Georgia do not have the authority, by any competent statutory grant, to engage in business as general insurance agents, and the phrase 'incidental powers necessary to carry on the banking business' appearing in Ga. Code § 41A-1202 (j), being read in proper context does not allow The Department to administratively create such a power. This ruling is dispositive of the main issue and requires the Court to conclude and hold that the final action of The Department in this case was in excess of statutory authority." Judgment was entered for the appellees and the final action of the Department approving C&S's application was set aside.

The application of the Department for a discretionary appeal to this court was granted so that we might review the trial court's interpretation of the permissible scope of the statutory powers afforded state banks under the "incidental powers" provision of Code Ann. § 41A-1202.

1. For reasons similar to those expressed in Saxon v. Ga. Assn. of Independent Ins. Agents, 399 F2d 1010, 1016 (6) (5th Cir. 1968) we reject the argument that the appellees were not "affected" by the Department's action and therefore lacked "standing" under Code Ann. § 41A-401 to bring the instant special statutory proceeding.

2. The question presented for resolution is simply stated: Do state banks have the power to engage in the business of selling insurance? Clearly such a power is not among those specifically enumerated as either a general corporate power of a bank under Code Ann. § 41A-1201 or as an additional operational power under Code Ann. § 41A-1202. However, while there is not a *specific* grant of such power under either statute, Code Ann. § 41A-1202 (j) does provide: "Banks and trust companies shall, in addition, have the power . . . to exercise all incidental powers as shall be necessary to carry on the banking or trust business, as the case may be, when approved by the Commissioner of Banking and Finance." Under Code Ann. § 41A-104 (a) (6) one of the underlying objectives of the "Financial Institutions Code of Georgia" is to provide for "appropriate competition among financial institutions and between them and other financial organizations including those organized under the laws of the United States, other States, and foreign Countries." Thus the question becomes whether a state bank, in the exercise of an "incidental power" and with the approval of the Commissioner, may engage in the business of selling insurance in the same manner as could a national bank under the banking laws of the United States.

We conclude that Code Ann. § 41A-1202 (j) establishes a legislative intent that state banks be authorized to exercise "incidental powers" and delegates the authority to approve such powers to the Commissioner, who shall be guided in this determination by the statutory objective stated in Code Ann. § 41A-104 (a) (6) of making state banks competitive with national banks. See generally *Crawley v. Seignious,* 213 Ga. 810 (102 SE2d 38) (1958). It is beyond dispute that under the provisions of 12 USCA § 92 in order for state banks to be "competitive" with national banks they be authorized to engage in the business of insurance if "located and doing business in any place the population of which does not exceed five thousand inhabitants." Under this interpretation of Code Ann. § 41A-1202 (j), if the Commissioner approves, it is an "incidental power" of a limited category of state banks to engage in the business of insurance.

There is a second and more compelling reason for holding that Code Ann. § 41A-1202 (j) evidences a legislative intent that that statute be construed so as to permit the administrative action taken by the Commissioner in this case. The General Assembly has, in effect, made engaging in the business of insurance an "incidental power" of certain state banks by adopting Code Ann. § 56-322 (a) (Ga. L. 1974, pp. 1101, 1102), which provides in relevant part: "No lending institution, bank holding company or any subsidiary or affiliate of either of the foregoing, doing business in this State, or any officer or

employee of any of the foregoing (but not including any director) may directly or indirectly be licensed to sell insurance in any municipality within this State which has a population which exceeds 5000, according to the latest United States decennial census . . ." We disagree with the trial court's refusal to consider Code Ann. § 56-322 as authority for a certain limited category of state banks to engage in the business of insurance.

Under Code Ann. § 56-322 (a), banks may not be licensed to sell insurance in any municipality with a population in excess of 5,000. Applying the underlying rationale of the maxim *expressio unis est, exclusio alterius,* we find that the exclusion on the licensing of banks to sell insurance does not apply to banks engaged in the business of insurance in municipalities with less than 5,000 inhabitants. If the General Assembly had intended that *no* state banks engage in the business of insurance it would not have directed the Commissioner of Insurance to deny licensing to banks to engage in that business only in municipalities of greater than 5,000 people. Thus, under Code Ann. § 56-322 banks may be licensed to engage in the selling of insurance in communities of less than 5,000 population but not in communities with larger populations. This is, in effect, the Attorney General's interpretation of former Code Ann. § 13-1802.

It is true that Code Ann. § 56-322 deals with licensing by the Insurance Commissioner whereas Code Ann. § 41A-1202 (j) deals with approval by the Commissioner of Banking and Finance of a state bank's "incidental powers." However, Code Ann. § 56-322 and Code Ann. § 41A-1202 (j) were enacted at the same legislative session and relate to the same subject matter—the permissive scope of a bank's powers—and must, therefore, be construed in pari materia. Cf. *Shehane v. Wimbish,* 34 Ga. App. 608 (131 SE 104) (1925). "[O]ur system of law is not to be construed by single Code sections or single provisions of the law; the entire system must be construed as a whole to determine the intent and purpose of the law as applied to each particular case or state of facts." *Lucas v. Smith,* 201 Ga. 834, 837 (41 SE2d 527) (1947). "It is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto." *Ryan v. Commrs. of Chatham County,* 203 Ga. 730, 731 (48 SE2d 86) (1948). When the statutes are read together unless the Commissioner of Banking and Finance has the authority under Code Ann. § 41A-1202 (j) to approve a state bank's *power* to engage in the insurance business, the directive in Code Ann. § 56-322 to the Commissioner of Insurance to deny

*licensing* to banks only to engage in the exercise of that power in municipalities of greater than 5,000 persons means nothing. Obviously Code Ann. § 56-322 contemplates that the Commissioner of Banking and Finance has the concomitant authority to give his preliminary approval to engage in the business of insurance to those banks which will subsequently be licensed to do so by the Commissioner of Insurance. It is only when the statutes are read together thusly that the "entire system" of regulating the entry of banks into the business of insurance in this state can be given effect. A state bank must first seek to secure the approval of its own regulatory authority to engage in the business of insurance as an "incidental power" under Code Ann. § 41A-1202 (j). The Commissioner of Banking and Finance is authorized to give his approval if the bank is located and doing business in a municipality of less than 5,000 inhabitants and would thereby be placed in "appropriate competition" with national banks. Under Code Ann. § 56-322 the Commissioner of Insurance would then be authorized to license the state bank to sell insurance within the limits of that municipality.

It is clear that if C&S were a national bank it would be entitled to engage in the business of insurance in Austell under 12 USCA § 92.12 CFR § 7.7100. Therefore, in order to make C&S, a state bank, "appropriately competitive" the Commissioner of Banking and Finance was authorized under Code Ann. § 41A-1202 (j) to give his approval to C&S to engage in the business of insurance. Under such rules and regulations as have been promulgated under Code Ann. § 56-322 (b), the Commissioner of Insurance would then be authorized to issue a limited license to C&S to sell insurance within the municipality of Austell. The trial court erred in construing the legislative intent of the entire statutory system by which a state bank may engage in the limited exercise of the business of insurance in this state. The final action of the Department in giving approval to C&S to engage in that business was not unlawful for any reasons asserted by the appellee. It was, therefore, error to set aside the Department's action taken with regard to the application of C&S.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED MAY 1, 1981 —
REHEARING DENIED MAY 18, 1981 —

*Arthur K. Bolton, Attorney General, Robert S. Stubbs II, Executive Assistant Attorney General, Don A. Langham, First*

*Assistant Attorney General, H. Perry Michael, Senior Assistant Attorney General, Kathryn L. Allen, Assistant Attorney General,* for appellant.

*Wilbur T. Fitzgerald, Charles A. Evans,* for appellees.

*Toby B. Prodgers, Susan B. Orsher, C. Wilson Dubose,* amici curiae.