A91A1180. TRAVELERS INSURANCE COMPANY v. McNABB et al.
A91A1181. McNABB v. GRANNY'S OF ATLANTA, INC. et al.
(410 SE2d 788)

SOGNIER, Chief Judge.

We granted the application of Travelers Insurance Company, the workers' compensation insurance carrier for Winkler Sign Company, to appeal from the order of the Superior Court of Gwinnett County affirming the State Board of Workers' Compensation's award of benefits to Tommy Wayne McNabb. McNabb's cross appeal is brought contingent upon our reversal of the judgment of the superior court in the main appeal, and challenges that portion of the award which would allow Granny's of Atlanta, Inc. and its alter ego corporation, Dynamic Development, Inc. (collectively "Granny's"), a credit for funds it contributed to a settlement paid to McNabb in a tort suit should it become liable to McNabb under the Workers' Compensation Act as his statutory employer pursuant to OCGA § 34-9-8.

The record reveals that McNabb, an employee of Winkler Sign Company (Winkler), a Tennessee employer, was injured in the course of his employment with Winkler in Gwinnett County, Georgia. McNabb, who was erecting a sign on premises leased by Granny's for a restaurant it was building, suffered catastrophic injuries. He applied for workers' compensation benefits in Tennessee and, pursuant to an order of the Hamilton County, Tennessee, Chancery Court, was awarded medical benefits and the maximum allowable income benefits. Travelers Insurance Company, the carrier assigned by the Tennessee Assigned Risk Plan, had issued to Winkler a policy of workers' compensation insurance which was in effect at the time of the injury, and it paid the award.

McNabb subsequently filed a third-party tort action in Georgia against various defendants, including Granny's. A settlement agreement was reached in that action awarding McNabb $360,000, of which Granny's contributed $60,000. Travelers exercised its right under Tennessee law to be subrogated to McNabb's claims against the third parties, and recovered $80,000 of the tort settlement from McNabb, which represented reimbursement of the $40,000 in income benefits paid and $40,000 in medical benefits paid to that date by Travelers.

Thereafter, McNabb filed this workers' compensation claim in Georgia. Travelers conceded its obligation to continue paying medical

benefits to McNabb under the Tennessee award, but contested its liability to cover Winkler, which had been adjudged bankrupt, for income benefits payable under Georgia, rather than Tennessee, law. The ALJ ruled that Travelers was responsible for the payment of Georgia workers' compensation income benefits to McNabb pursuant to its policy covering Winkler, but was entitled to a credit against the Georgia income benefits due for the amount of income benefits paid under Tennessee law. The Board affirmed the award of the ALJ insofar as it ruled that Travelers was obligated to pay Georgia income benefits, but disallowed the credit to Travelers on the ground that an employer's right to be subrogated to an employee's claim against a third party tortfeasor to the extent of the workers' compensation benefits paid had been repealed by statute in Georgia. See Ga. L. 1972, pp. 3-4 (repealing former Ga. Code Ann. § 114-403). Reasoning that Travelers had recovered all the Tennessee benefits it had paid, and that recovery of those benefits by subrogation was not allowable under the law of this state, the Board ruled that Travelers must be required to pay Georgia income benefits as though, in essence, it had never paid Tennessee benefits. The superior court affirmed the Board's award, finding there was some evidence to support it.

1. We note initially that no question exists that Georgia had jurisdiction to adjudicate this claim because McNabb performed work in Georgia, *Slaten v. Travelers Ins. Co.*, 197 Ga. 1, 6 (28 SE2d 280) (1943); *Standard Acc. Ins. Co. v. Gulledge*, 86 Ga. App. 493, 494 (2) (71 SE2d 571) (1952), and Travelers has stipulated to Georgia jurisdiction. Granny's, however, contends in its briefs, without enumerating it as error, that although the superior court held otherwise, Travelers' notice of appeal was untimely, thereby depriving this court of jurisdiction over the appeal.

Since a proper and timely notice of appeal is an absolute requirement to confer jurisdiction on this court, see *Moncrief v. Tara Apts. Ltd.*, 162 Ga. App. 695 (293 SE2d 352) (1982), and given that "[r]ule 32 (d) of this court requires us to consider a lack of jurisdiction 'whenever and however' the lack of jurisdiction may appear, [cit.]" *Gale v. Hayes Microcomputer Prods.*, 192 Ga. App. 30, 31 (3) (383 SE2d 590) (1989), we have both the duty and the obligation to inquire into our appellate jurisdiction.

OCGA § 34-9-105 (b) provides, in pertinent part, that an appeal from a decision of the board may "be brought by either party upon ten days' written notice to the other before the superior court for a hearing upon [the] record, subject to an assignment of the case for hearing by the court; provided, however, if the [superior] court does not hear the case within 60 days from the date the notice of appeal is filed with the board, the decision of the board shall be considered affirmed by operation of law unless a hearing originally scheduled to

be heard within the 60 days has been continued to a date certain by order of the court." In the case sub judice the record shows that although Travelers properly scheduled a hearing on its appeal in the superior court for November 7, 1990, which was within 60 days from the filing of the notice of appeal, ten days' written notice was not given to the other parties. Consequently, when Travelers alone appeared at the scheduled hearing, the hearing was continued orally by the superior court until December 19, 1990, and that rescheduling was memorialized in a written order entered November 14, 1990, after the 60 day limit.

Granny's argues that both Travelers' failure to follow the notice provisions of OCGA § 34-9-105 (b) and also the entry after the 60 day limit of the written order rescheduling the hearing resulted in automatic affirmance of the Board's award under that statute. Therefore, Granny's asserts, Travelers' appeal to this court, filed on February 21, 1991, was untimely pursuant to OCGA § 5-6-35 (d), since it was not filed within 30 days of November 10, 1990, the date of the automatic affirmance.

We do not find this contention persuasive. First, the Supreme Court has recently held that failure to follow the statutory ten-day notice procedure will not result in automatic affirmance under OCGA § 34-9-105 (b) where, as here, within the 60 day period, the superior court resets a scheduled hearing for a date outside the 60 days in order to rectify the problem. *Felton Pearson Co. v. Nelson*, 260 Ga. 513 (397 SE2d 431) (1990). The court reasoned that to rule otherwise "exalts the need for speedy disposition over fair treatment of the parties and the policy of reaching the merits of a controversy." Id. at 515.

Second, although OCGA § 34-9-105 (b) does require that the appeal filed with the Board and the ten-day notice given to the opposing party be "in writing," nothing in the statute suggests that this requirement applies to superior court orders continuing hearings. Thus, applying the maxim *expressio unis est, exclusio alterius*, see generally *Department of Banking &c. of Ga. v. Independent Ins. Agents*, 158 Ga. App. 556, 559 (281 SE2d 265) (1981), rev'd on other grounds 248 Ga. 787 (285 SE2d 535) (1982), we conclude that OCGA § 34-9-105 (b) does not require that the superior court enter a *written* order within the 60 day limit to avoid automatic affirmance. Accordingly, as a hearing was scheduled within the 60 day period in this case and was rescheduled by a valid, albeit oral order of the superior court within that time, the statutory requirements were met, and the superior court did not err by finding that the Board's award was not automatically affirmed by operation of law. Travelers' application for leave to appeal to this court, having been filed within 30 days of the entry of the superior court order affirming the Board's award, was therefore timely.

2. Regarding the merits of the main appeal, Travelers contends the superior court erred by affirming the Board's award because there was no evidence to support the ALJ's finding that the policy issued by Travelers to Winkler provided coverage for benefits under Georgia law. Travelers maintains that the policy language clearly limited the policy to payment of benefits awardable under Tennessee law; that such a policy provision is valid in Tennessee, the site of the contract, and enforceable in Georgia; and that there is no evidence of fraud or deceit by Travelers so as to void this policy limitation. Accordingly, Travelers argues, if McNabb is entitled to Georgia income benefits, then Granny's, as McNabb's statutory employer under OCGA § 34-9-8, and its workers' compensation carrier, Nationwide Insurance Company, are responsible for paying them, and thus Travelers should have been dismissed from the instant Georgia workers' compensation claim. (We note that Winkler has not appealed its liability, but its principals were never located.) We agree and reverse.

(a) The record clearly demonstrates that the policy in question limited coverage to benefits payable under Tennessee law. The record shows that the policy in question was issued in Tennessee through an independent Tennessee agent via the Tennessee Assigned Risk Pool to a Tennessee employer. An endorsement to the policy dealing with computation of premiums lists only "TN" in the "Table of States" in which the policy is effective. Paragraph I of the body of the policy requires the carrier "[t]o pay promptly when due all compensation and other benefits required of the insured by the work[ers'] compensation law," which is defined as the "workers' compensation law and any occupational disease law of a state designated in Item 3 of the declarations." Item 3 of the policy's declarations provides that the workers' compensation coverage "of this policy applies to the workers' compensation law and any occupational disease law of each of the following states: TN." No other state is enumerated. The policy also provides that "this policy, the declarations and all the schedules and endorsements issued to form a part hereof, constitute the entire insurance policy." Based on this evidence of record, we cannot agree with the ALJ's conclusion that "[i]n the workers' compensation policy here, there is no statement manifesting the intention of Travelers to limit coverage solely to the workers' compensation laws of Tennessee," as we find no evidence to support that conclusion.

(b) We find this limitation is enforceable in Georgia. It is undisputed that the contract was executed in Tennessee. Tennessee law permits an *insurance carrier* to limit its liability to the workers' compensation laws of a given state or states, although this does not exempt the *employer* from liability in other states in which he is actually conducting operations. See *Thomas v. Transport Ins. Co.*, 532 SW2d 263 (Tenn. 1976). "Georgia follows the doctrine of lex loci con-

tractus, [cit.]" *Dacosta v. Allstate Ins. Co.*, 188 Ga. App. 10, 11 (372 SE2d 7) (1988), and thus this Tennessee rule applies to the insurance contract at issue because it was made in Tennessee and nothing in the policy indicates it was to be construed as a Georgia contract. See id. We cannot agree with the ALJ that the holdings in *Sargent Indus. v. Delta Air Lines*, 251 Ga. 91 (303 SE2d 108) (1983) and *Wardell v. Richmond Screw Anchor Co.*, 133 Ga. App. 378 (1) (210 SE2d 854) (1974) provide "[h]igher authority" for not applying this doctrine, as those cases were tort claims and thus did not involve the doctrine of lex loci contractus, but dealt with the analogous — but not identical — doctrine of lex loci delictus. "The leading Georgia case explanatory of the law of lex loci contractus is *Trustees of Williams Hospital v. Nisbet*, 189 Ga. 807 (7 SE2d 737) [(1940)] where our court said . . . : 'Where a pleaded contract not only is executed in a foreign State, but contains nothing to indicate by the place of performance or otherwise that it was intended to be construed as a Georgia contract, it will be treated as a contract of the foreign State, and governed by its laws. (Cits.)' " *Mathews v. Greiner*, 130 Ga. App. 817, 819 (204 SE2d 749) (1974).

The only exception to enforcement of a rule of foreign law is where the result will violate the public policy of this state. *Terry v. Mays*, 161 Ga. App. 328, 329 (291 SE2d 44) (1982). However, " '[e]nforcement of a contract or a contract provision which is valid by the law governing the contract will not be denied on the ground of public policy, unless a "strong case" for such action is presented; mere dissimilarity of law is not sufficient for application of the public policy doctrine. . . .' [Cit.]" Id.

We do not agree with the ALJ that the public policy of this state would be frustrated if Travelers is not found liable for Georgia coverage beyond its policy limitation. First, such a result would not frustrate the purposes of the Act. Although Winkler is insolvent and its principals were not found by any of the parties to this action, the dismissal of Travelers would not result in an uncompensated claimant because Granny's was found to be McNabb's statutory employer pursuant to OCGA § 34-9-8. See Division 3, infra.

Second, such a limitation is consonant with general public policy in Georgia. We have found nothing in the Georgia Workers' Compensation Act, OCGA § 34-9-1 et seq., or in the case law based thereon specifically prohibiting under Georgia law the type of limitation allowed in Tennessee. Of course, an employer is liable for whatever benefits are awarded under Georgia law if the employer is subject to the Georgia Act. However, the coverage provided under a particular policy, which is nothing more than a contract between the employer and the insurance carrier, is another matter. "The 'freedom of individuals to contract' is part of the basic liberties enjoyed by the citi-

zens of this state and should not be interfered with in the absence of clear necessity." *National Consultants v. Burt*, 186 Ga. App. 27, 32 (366 SE2d 344) (1988). It is well established that the Workers' Compensation Act "does not impair the contractual relations fixed in the policy of insurance between the insurance carrier and the employer. It has the effect only of placing upon the insurance carrier an estoppel to plead as a defense that the employer is not subject to the act." *Maryland Cas. Co. v. Sanders*, 49 Ga. App. 600, 601 (5) (176 SE 104) (1934), rev'd on other grounds 182 Ga. 594 (186 SE 693) (1936).

Third, it has long been held that Georgia workers' compensation law condones limitations which exclude certain of the employer's activities from coverage under a particular policy even where the Act requires coverage for the excluded activities. See, e.g., *Hardware Mut. Cas. Co. v. Collier*, 69 Ga. App. 235, 239-242 (1) (25 SE2d 136) (1943) (carrier not estopped to show that its policy did not cover a business which was acquired subsequent to the issuance of its policy, despite the lack of coverage for that business); *Gulledge*, supra (one of two insurers held not liable for coverage because its policy limited coverage to certain enumerated projects); *Hanover Ins. Co. v. Sharpe*, 148 Ga. App. 195, 199-200 (2) (250 SE2d 815) (1978) (employer may insure different operations of its business separately with different insurance companies; insufficient evidence supporting Board's finding of joint liability of two carriers for particular injury). Indeed, OCGA § 34-9-121 provides that "[n]othing in this Code section shall be construed to require an employer to place his entire insurance in a single insurance carrier." Thus, given the circumstances present here, we find that under Georgia law the clear limitation in the policy to Tennessee benefits does not violate the public policy of this state and would be enforced.

(c) We do not agree with the ALJ's suggestion that fraud by Travelers should operate to void any policy limitation, as we find no evidence in this record showing fraud and deceit on the part of Travelers, as found by the ALJ. The ALJ based his conclusion that fraud existed primarily on the deposition testimony of Donald Patterson, commercial lines underwriter for Travelers, which the ALJ found was "vague, equivocal, and contradictory." The majority of Patterson's testimony, however, concerned the reason for Travelers' cancellation of Winkler's policy, which occurred *after* it accepted liability for coverage of McNabb's injury, and thus was immaterial to the claim sub judice. After careful review, we do not find Patterson's testimony, either as to the cancellation or in any other manner, suggests fraud by Travelers.

The ALJ's other stated bases for his finding of fraud include Travelers' submission of only a *"copy"* of the policy, rather than the original, as evidence of the intention of the parties to limit coverage;

its failure to comply with the claimant's notice to produce certain records; the bankruptcy of Winkler; and the nonavailability for deposition by the claimant of "Mr. King, Winkler's representative in coverage contract negotiations." As to the copy of the policy, the "original" was in the possession or control of Winkler, not Travelers, and the record shows that none of the parties to this claim was able to locate Winkler's principals despite extensive effort. Regarding Travelers' failure to comply with the notice to produce documents, Patterson testified at deposition that he had produced all requested documents in Travelers' custody and control. Patterson also testified that the company's policy was to retain records for three years after coverage ceases, and that because more than three years had elapsed since its coverage of Winkler ceased, some records had been purged from the files in routine fashion. We find nothing in that testimony to suggest fraud. Finally, nothing in the record indicates that either the bankruptcy of Winkler or the nonavailability of King was caused by Travelers.

Accordingly, we hold that the superior court erred when it affirmed that portion of the award of the Board holding Travelers liable for coverage under the Georgia Act. Travelers' motion to be dismissed from the Georgia claim should have been granted.

3. Because we have reversed the judgment in the main appeal, we must address McNabb's cross appeal concerning the liability of Granny's as his statutory employer.

OCGA § 34-9-8 (a) provides that "[a] principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer." It is uncontroverted that Granny's was acting as general contractor in the construction of its restaurant, engaging individual subcontractors and independent contractors, including Winkler, to complete particular phases of the construction, and accordingly would be liable under the statute should Winkler, its subcontractor, prove unable to pay the award. The ALJ so found, and Granny's does not enumerate that finding as error. The ALJ also found, however, that should Travelers prevail on this appeal and be dismissed from the action, Granny's, as McNabb's statutory employer, should be allowed to credit the $60,000 it paid towards the tort claim settlement against its liability for Georgia workers' compensation benefits. McNabb contends the superior court erred by affirming that portion of the award of the Board allowing that credit. We agree.

The ALJ allowed the credit on the theory that even if Granny's were ultimately held liable as McNabb's statutory employer, it should not be penalized for contributing to the tort settlement made at a time when it did not occupy the position of statutory employer be-

cause Winkler, McNabb's immediate employer, had coverage under Tennessee law through its policy issued by Travelers. It is true, as argued by Granny's, that the purpose of OCGA § 34-9-8 is to encourage "the statutory employer to require subcontractors to carry workers' compensation insurance[, and t]he fact that the statutory employer [imposes such a requirement as] intended by the legislature should not result in a penalty on the statutory employer [in the form of tort liability]." *Wright Assoc. v. Rieder*, 247 Ga. 496, 499-500 (1) (277 SE2d 41) (1981) (construing former Code Ann. § 114-112). However, in this case, contrary to its contention, Granny's, as the statutory employer, did not react as the legislature intended, as it did not ascertain or ensure that Winkler had workers' compensation coverage *in Georgia.* Consequently, Granny's knew or should have known of its potential liability as a statutory employer and its concomitant tort immunity. The fact that at the time it entered into the tort settlement it had not been held to be *liable* for benefits as the statutory employer is immaterial. "[E]ven though the principal contractor ha[s] not actually paid workers' compensation benefits, it [is] still a statutory employer of the subcontractor's employee under OCGA § 34-9-8 . . . with a potential liability for workers' compensation payments. Therefore, . . . the principal contractor still enjoy[s] tort immunity." *Long v. Marvin M. Black Co.*, 250 Ga. 621, 622 (300 SE2d 150) (1983).

Since Granny's enjoyed tort immunity at the time it contributed to the tort settlement, that payment constituted a voluntary payment. "Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property." OCGA § 13-1-13. " 'Money paid through mistake of law, with full knowledge of all the facts, can not be recovered back, unless it is made to appear that the person to whom it was paid can not in good conscience retain it.' . . . [Cit.]" (Emphasis omitted.) *Graves v. Carter*, 208 Ga. 5, 6 (2) (64 SE2d 450) (1951). Given that allowing Granny's a credit for its voluntary payment would result in recovery of a voluntary payment, and in view of McNabb's need for lifetime maintenance because of the catastrophic nature of his compensable injuries as well as the overall purpose of the workers' compensation law, we hold that Granny's is not entitled to such credit.

*Judgment reversed in both cases. McMurray, P. J., concurs. Andrews, J., concurs in Case No. A91A1180 and concurs in the judgment only in Case No. A91A1181.*

DECIDED SEPTEMBER 10, 1991 —
RECONSIDERATION DENIED SEPTEMBER 25, 1991 — 

*Irwin, Bladen, Baker & Russell, Thomas C. MacDiarmid,* for Travelers.

*Harriss, Hartman, Townley & Wharton, Robert A. Wharton, Jr., James A. Secord,* for McNabb.

*Wilson, Strickland & Benson, N. Sandy Epstein, Anne W. Lewis,* for Granny's of Atlanta and Nationwide Insurance.