### 3846. TENNESSEE COAL, IRON & RAILROAD CO.
### GEORGE.

1. Section 906 of the Revised Statutes of the United States, which was enacted to carry into effect article 4, section 1, of the Federal constitution, requires the courts of the several States to enforce any transitory cause of action created by a statute of a sister State, not opposed to the settled policy of the State wherein it is sought to enforce the cause of action. But neither the constitution of the United States nor any act of Congress passed in pursuance thereof authorizes the legislature of a State to deny to one having a transitory cause of action, originating in that State under one of its statutes, the right to appeal to the courts of another State for the enforcement of his cause of action.
2. In civil cases it is discretionary with the trial judge whether he will permit the jury to be polled; and the reviewing court will interfere only in a clear case of abuse of discretion. There was none such in the present case.
3. Under the facts of this case it was not error requiring the grant of a new trial to permit the plaintiff to testify that there was nothing he could have done which he did not do to prevent the injuries he received.

DECIDED JUNE 5, 1912.

Action for damages; from city court of Atlanta—Judge Reid. October 27, 1911.

The plaintiff brought his action by attachment in the city court of Atlanta, claiming damages for personal injuries alleged to have been received by him while in the defendant's employment as a locomotive engineer in the State of Alabama. The plaintiff pleaded, as the basis of his right to recover, § 3910 of the Code of Alabama of 1907. That section provides that when a personal injury is received by a servant in the service or business of his master, the master is liable in damages to the servant, as if he were a stranger and not engaged in the service of the master, in several named cases, among which are the following: (1) when the injury is caused by reason of any defect in the ways, works, machinery, or plant connected with, or used in the business of the master; (2) when the injury is caused by reason of the negligence of any person in the employment of the master who has any

.superintendence intrusted to him while in the exercise of such superintendence; (3) when such injury is caused by the negligence of any coemployee of the master, to whose orders or directions the injured servant was at the time of the injury bound to conform, and did conform, if such injuries resulted from obedience to such orders; (4) when the injury is caused by reason of the act or omission of any servant in the service or employment of the master, done or made in obedience to the rules or regulations of the master, or in obedience to particular instructions given by any person delegated with the authority of the master; (5) when the injury is caused by reason of the negligence of any person in the employment of the master who has charge or control of any signal, locomotive, or other named appliance of the master. It is further provided in the section that the master is not liable if the servant knew of the defect causing the injury and failed in a reasonable time to give information thereof to the master or to some person superior to himself, unless the master or such superior already knew of the defect; nor is the master liable under subdivision 1 of the section, unless the defect arose from, or had not been discovered or remedied owing to, the negligence of the master or of some person in the service of the master and intrusted by him with the duty of seeing that the ways, works, and other named appliances were in proper condition; provided that in no event shall it be contributory negligence, or an assumption of the risk on the part of a servant, to remain in the employment of the master after knowledge of the defect or negligence causing the injury, unless he be a servant whose duty it is to remedy the defect, or who committed the negligent act causing the injury complained of.

The plaintiff was injured while undertaking to repair a locomotive, and on account of certain defects in the locomotive, which are set forth in detail in the petition. In defense to the action the defendant pleaded, among other things, section 6115 of the Code of Alabama of 1907, which is in the following language: "All actions brought under sections 2486 and 3910 must be brought in a court of competent jurisdiction within the State of Alabama and not elsewhere." On motion of the plaintiff the court struck this plea, and this is the primary error assigned in the record. A

verdict in favor of the plaintiff was returned, and the defendant's motion for a new trial was overruled.

In this court the plaintiff in error expressly abandoned those grounds of the motion for a new trial in which complaint is made that the verdict is not authorized by the evidence and is excessive. The only ground of the motion insisted upon here is the overruling of its objection to the following question propounded by the plaintiff's attorney to the plaintiff while testifying in his own behalf: "Was there anything else you could have done to keep the engine still when you were under it?" The objection was that the question called for an expression of an opinion on the part of the witness, in reference to a matter which was solely for decision by the jury. The witness answered the question as follows: "Nothing on earth that I know of."

There is a further assignment of error in the bill of exceptions as follows: After the verdict had been announced and before the jury were dispersed and the verdict had been recorded, the defendant's counsel made the following statement and motion: "Having reason to suspect a practice with the juries in this county of arriving at verdicts in illegal ways, such as by agreements in advance to abide by the vote of less than the whole twelve as to whether the finding should be in favor of the plaintiff or the defendant, and by agreements in advance to fix the amount of recoveries as damages as the average arrived at by totalling the amounts expressed by such individual juror and dividing the sum by twelve, and thus producing a quotient or speculative verdict, I respectfully request, on behalf of the defendant, that this jury be polled, and each juror interrogated as to whether the verdict rendered is his individual verdict, unaffected by any agreement among the jurors in advance of arriving at it, by which it was found to be in favor of the plaintiff, and independent of any agreement with the other jurors in advance of arriving at it, by which the amount of it was fixed by any calculation of averages of the estimates of individual jurors." The court overruled this motion and declined to propound the questions suggested by counsel, though it seems, from a statement in the brief of counsel for the plaintiff in error, that the court was willing to permit the usual question to be propounded to each of the jurors, "Is this your verdict?"

*Smith, Hammond & Smith,* for plaintiff in error.

*Reuben R. Arnold, Lamar Hill,* contra.

POTTLE, J. (After stating the foregoing facts.)

1. Both in the trial court and in this court the plaintiff in error, in support of its plea that the action could not be maintained, because of the provisions of § 6115 of the Code of Alabama of 1907, invoked article 4, section 1, of the constitution of the United States, which is in the following language: "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State; and the Congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effects thereof." Section 6115 was adopted with the Code of 1907 in solido some time after the passage of the act contained in § 3910, and in the argument for the defendant in error some importance is attached to this fact. We prefer, however, to deal with the point as if the restriction of the right to sue to the courts of competent jurisdiction in Alabama had been part and parcel of the statute creating the cause of action. It is broadly contended by counsel for the plaintiff in error that the full faith and credit clause of the Federal constitution would compel the courts of Georgia to give effect to the limitation contained in § 6115, and to refuse to take cognizance of a suit based upon the provisions of § 3910. In other words, it is insisted that the State of Alabama has the power to create a right and limit its enforcement to the courts of that State. Counsel for the defendant in error reply that the laws of Alabama can have no extraterritorial effect; that while any condition or limitation prescribed by the legislature of that State which goes merely to the manner in which the right shall be exercised is binding upon the courts of that State, yet that all conditions or limitations which affect merely the remedy have no force beyond the limits of the State, but are matters as to which the lex fori controls.

It is, of course, well settled that the courts of one State will enforce any transitory cause of action arising in another State which is not opposed to the settled policy of the State wherein it is sought to enforce the right. The question, therefore, presented for our determination is whether the legislature of one State can create a statutory right which gives rise to a transitory cause of action, and at the same time localize the right so as to prevent its enforcement beyond the limits of the State. In the early history of

this country Congress passed acts, in execution of the constitutional grant of power above quoted, which provided that the acts of legislatures of the several States should have such faith and credit given to them in every State of the United States as they have by law and usage in the courts of the State in which they were enacted. 1 Stat. at Large, ch. 122, p. 11; U. S. Comp. Stat. 1901, p. 677. Does the provision of this act of Congress, construed in connection with section 1 of article 4 of the Federal constitution, compel the courts of Georgia to give effect to § 6115 of the Code of Alabama, denying to a person injured in the State of Alabama, on account of negligence of one domiciled in that State, the right to maintain an action under the provisions of § 3190 of the code of that State in any court other than the courts of competent jurisdiction of that State? This court has twice had under consideration the identical question presented by this assignment of error. In *Southern Railway Co.* v. *Decker,* 5 *Ga. App.* 21, 34, in referring to § 6115 of the Code of Alabama of 1907, it was said: "Even if this statute had been in force at the time the suit was instituted, it would have been the duty of the courts of this State to disregard it. Our own sense of justice, subject to the guidance of the lawmaking power of this State, determines solely and alone what laws, domestic or foreign, we will enforce; and this discretion is subject to neither limitation nor extension by the legislature of any other State." This language was quoted approvingly in *Southern Railway Co.* v. *Robertson,* 7 *Ga. App.* 154, 162. In neither of the cases just cited was the question directly involved, and we are called upon now for the first time to make an authoritative ruling upon the point presented. Prior to the passage of the act of Congress in execution of the full faith and credit clause of the Federal constitution, the question as to whether laws of a foreign State would be enforced by the courts of another State was determined largely as a matter of comity between the States. As was said by Judge Nisbet in *Cox* v. *Adams,* 2 *Ga.* 164: "The laws of a country, as a general principle, have no binding force beyond its territorial limits. Their authority is admitted in other States, not ex proprio vigore, but ex comitate; not on account of any inherent force in the law itself beyond the limits of the State which enacts it, but because of the comity of nations. Each State has the unquestioned right to legislate upon the rights and obliga-

15

tions of its own citizens, according to its own views of right and
expediency. So, also, every independent State will judge for itself
how far it shall or shall not admit the force of foreign laws within
its own territory. These principles, as well as those we shall further
declare in this opinion, are applicable to the States of our own
Union, so far as they are not modified by our peculiar system—so
far as the constitution of the Union does not limit, restrain or alter
them."

Generally speaking, any transitory cause of action authorized by
the law of one State would by comity be enforced by the courts of
another, if not opposed to the settled policy of the latter State.
Since the passage of the act of Congress the question has become
one upon which the decisions of the Supreme Court of the United
States are binding upon the several States; and the courts of this
State are bound to yield respect and obedience to an authoritative
ruling of the Supreme Court of the United States upon the ques-
tion as to what effect should be given to an act of the legislature
of one State when a right thereunder is set up or claimed in the
courts of another State. In our opinion the question is settled
authoritatively against the contention of the plaintiff in error by
the decision of the Supreme Court of the United States in the
case of Atchison R. Co. *v.* Sowers, 213 U. S. 54 (53 L. ed. 695).
In that case a statute of the territory of New Mexico was involved.
That statute provided: "Whereas, it has become customary for
persons claiming damages for personal injuries received in this
territory to institute and maintain suits for the recovery thereof
in other states and territories, to the increased annoyance and man-
ifest injury and oppression of the business interests of this terri-
tory, and the derogation of the dignity of the courts thereof," it
was enacted that after the passage of that act no civil liability,
under either the common law or any statute of the territory, on the
part of any person or corporation, for personal injuries or death
caused by such person or corporation in the territory, should be en-
forced in any court other than the district court of the territory in
and for the county of the territory where the claimant or the person
against whom the claim was asserted resided, or, if a corporation,
in the county in which the corporation had its principal place of
business. It was further prescribed by the act that there should
be certain conditions precedent to suit, such as service upon the

person or corporation against whom the damages were claimed, within ninety days after the injury and thirty days before the commencement of the suit, of an affidavit by the claimant, stating his name and address and the name of the person receiving the injuries, the character and extent of the injuries, the way or manner in which the injuries were caused, and the names and addresses of all the witnesses to the happening of the facts causing the injuries; also that all of the conditions thereinbefore mentioned, including the bringing of the action within one year in a court within the territory, must be complied with, and "that such right of action is given only on the understanding that the foregoing conditions precedent are made a part of the law under which the right to recover can exist for such injuries," except as otherwise provided in the act. An action was brought in one of the courts of Texas by a person who had sustained personal injuries in the territory of New Mexico, and the statute of New Mexico, above referred to, was pleaded as a defense to the action. The Court of Civil Appeals of Texas refused to sustain the defense, and held, in substance, that while all the conditions precedent to suit, as prescribed by the act of New Mexico, in reference to giving of notice, furnishing the list of the witnesses, making an affidavit, etc., would be enforced by the courts of Texas, those courts were not bound to recognize and respect an act of the territory of New Mexico which limited the right to suit to the courts of that territory. In the course of the opinion that court said: "The State of Texas is bound, under section 1, article 4 of the constitution of the United States, to give full faith and credit to the public acts, records, and judicial proceedings of every other State, but it is not required to recognize a statute of any State that seeks to fix the jurisdiction of its courts and prevent the citizens of other States from using its courts, if they so desire, in the enforcement of their rights. The jurisdiction of our courts must and will be prescribed by the constitutional and legislative authority of our State, and not by that of any other State. A law attempting such interference is null and void, and, as such, does not come within the constitutional provision aforementioned. There is nothing in the contention that a void statute is binding on the courts of Texas until the territorial courts declare the law invalid. In the very nature of things the question will probably never be presented

to the territorial courts, and, in the next place, their decision could not give vitality to a void statute respecting the jurisdiction of the courts of this State. We do not question the authority of the laws of New Mexico so far as they apply to its own affairs, but we repudiate them when they attempt to regulate the affairs of other States. The right of injured parties to recover damages from the negligent inflicter of the injuries is recognized in New Mexico, although recognition carries with it burdensome and vexatious conditions, of which, however, if its citizenship is willing to endure them, no one is in a position to complain. But the citizens of other States can not be forced into its courts by a legislative provision that such suits can be instituted and prosecuted in the courts of no other State." Atchison R. Co. *v.* Sowers, 99 S. W. 192. The decision was carried to the Supreme Court of the United States upon writ of error, and that court held that a Federal question was presented by the writ of error, and made the ruling stated in the following syllabus (213 U. S. 53 L. ed. 695) : "The full faith and credit demanded by U. S. Rev. Stat. § 906, U. S. Comp. Stat. 1901, p. 678, is given by the Texas courts to N. M. act of March 11, 1903, providing that an action for personal injuries received in that territory will not lie unless certain requirements as to the making of an affidavit and the bringing of suit within a specified time are observed, where a recovery is permitted in those courts subject to such restrictions, although the statute also undertakes to make the suit maintainable only in the district court of the territory." The view entertained by that court will be seen by an inspection of the opinion of the majority, written by Mr. Justice Day, from which the following excerpts are taken: "It is, then, the settled law of this court that in such statutory actions the law of the place is to govern in enforcing the right in another jurisdiction, but such actions may be sustained in other jurisdictions when not inconsistent with any local policy of the State where the suit is brought." "'Each State may, subject to the restrictions of the Federal constitution, determine the limits of the jurisdiction of its courts, the character of the controversies which shall be heard in them, and, specifically how far it will, having jurisdiction of the parties, entertain in its courts transitory actions, where the cause of action has arisen outside its borders.' St. Louis, I. M. & S. R. Co. *v.* Taylor, 210 U. S. 281,

285 (52 L. ed. 1061, 1064, 28 Sup. Ct. 616). The territory of New Mexico has a right to pass laws regulating recovery for injuries incurred within the territory. Martin v. Pittsburg & L. E. R. Co., 203 U. S. 284 (51 L. ed. 184, 27 Sup. Ct. 100, 8 A. & E. Ann. Cas. 87). It has a right, under § 906 of the Revised Statutes, to require other States, when suits are therein brought to recover for an injury within the territory, to observe the conditions imposed upon such causes of action, although otherwise controlled by common-law principles. But when it is shown that the court in the other jurisdiction observed such conditions, and that a recovery was permitted after such conditions had been complied with, the jurisdiction thus invoked is not defeated because of the provision of the statute referred to." Mr. Justice Holmes, with whom concurred Mr. Justice McKenna, dissented, holding that inasmuch as the territory of New Mexico could have refused to create the right of action altogether if it had seen fit when it adopted the common-law liability upon certain conditions precedent, one of which was that the party injured should sue in the territory, this condition was binding and no suit could be maintained in the courts of any other State.

Counsel for the plaintiff in error argue that the distinction between the case of Atchison R. Co. v. Sowers, supra, and the one now under consideration is that in the former case the substantive cause of action existed at common law and did not depend upon statute. They contend that while a State would not have the right to restrict to its own courts the enforcement of a common-law liability, it does have the right to so limit a liability created by its statutes; in other words, that as the State need not have created the liability, it has a right to prescribe the forum in which the cause of action should be enforced. It seems to us that this distinction can not be sustained, and that the purpose and intent of the decision of the United States Supreme Court was to hold broadly that the courts of each State have a right to determine for themselves, subject only to the limitations of the Federal constitution and the acts of Congress passed in pursuance thereof, what transitory causes of action they will enforce, and that it is beyond the power of the State creating the cause of action to deny the right to enforce it in the courts of another State. It seems to us inaccurate to say that the limitation sought to be imposed by

the legislature of Alabama is a condition affixed to the right created by the statute. It is really a limitation or restriction which goes merely to the remedy. Remedy for the enforcement of a right embraces not only the procedure for its enforcement, but also the forum in which it shall be enforced. The forum in which a right must be enforced is no part of the right. A right might be created and no tribunal be erected in which to enforce it, but the right would none the less exist. It would simply be inoperative or remain in abeyance until a tribunal was invested with jurisdiction to enforce it. It is much like the case where an act is prohibited by law, but no penalty is prescribed. One who commits the act violates the law, even though no penalty be attached to the violation. The constitution of the United States requires a State to deliver up a fugitive from justice from another State. The fact that no method is prescribed for compelling obedience to this mandate does not destroy or affect the right of one State to demand the surrender of the fugitive, or the obligation of the State to which the fugitive has fled to deliver him up. The right now claimed will be enforced in the courts of Georgia in strict accordance with the statute of Alabama, as will also every condition of that statute which relates to the right. In other words, when suit is brought in one of the Georgia courts under the Alabama statute, the Georgia court is substituted for the Alabama tribunal, and will enforce the right in the same way, according to the same principles and to the same effect, as it would be enforced in the State of Alabama. More than this, we will construe the statute as it is construed by the highest court of the State of Alabama, and we will give due effect to all of the laws of Alabama which affect the right created by the statute. The statute of Alabama is the source of the right on which the jurisdiction acts, but it is not the source of the jurisdiction itself. We look to the act to determine the right, but we refuse to look to the law of Alabama to determine what rights the courts of this State will enforce, or to fix the jurisdiction of its tribunals. Cases are tried in Alabama upon the settled principles of the common law, and they are tried in Georgia upon the same principles and substantially according to the same procedure. While the common law is presumed to be of force in nearly all of the American States, there is no such thing as a commmon-law liability, except as such liability may be recognized by statute.

While the right may be founded upon the common law, and the origin of the right may be derived from the common law, it is none the less statutory, since the common law has no force and effect in the several States except as it may have been adopted by statute. Alabama has as much right to withhold its sanction of a right existing at common law as it has to withhold legislative recognition of a new right, not existing at common law. It is true that the right created by the Alabama statute now under consideration did exist at common law, although there are certain statutory incidents and qualifications which were not recognized at common law. But without reference to this, even if the right itself had been one which did not exist at common law, if the statute creates a transitory cause of action not opposed to the settled policy of this State, the courts of Georgia will not close their doors to one claiming a right under the statute, notwithstanding the amendment to the law, which seeks to confine the right to sue to the courts of competent jurisdiction within the State of Alabama. Our opinion is that the decision of the Supreme Court of the United States, above referred to, is absolutely controlling on the question presented, and that the trial court properly declined to sustain the defense based upon the provisions of § 6115 of the Code of Alabama of 1907.

2. In criminal cases the defendant has an absolute right to poll the jury, but in civil cases it is discretionary with the court whether the losing party shall be permitted to exercise this privilege. *Bell* v. *Hutchings,* 86 *Ga.* 562; *Black* v. *Thornton,* 31 *Ga.* 641; *Smith* v. *Mitchell,* 6 *Ga.* 458; *Rutland* v. *Hathorn,* 36 *Ga.* 380. Upon authority of these decisions, even if the defendant had requested the presiding judge to permit the polling of the jury in the usual way by simply asking each juror if the verdict returned was his verdict, it would have been discretionary with the judge to permit or refuse the request. It may be seriously doubted if the trial judge had the right to propound to the jury the question suggested by the counsel for the defendant, even if he had been disposed to do so. The request was based upon an ex parte statement of counsel that he had reason to suspect that the juries of Fulton county were in the habit of returning what is termed a quotient verdict in suits for damages. There was no suggestion that this particular jury had adopted this course in arriving at

their verdict, or that there was any irregularity in the manner in which the verdict had been reached. In addition to this, the practical effect of an answer from the jurors as to the manner in which the verdict had been arrived at would have been to permit them to impeach their own verdict. No juror would have been allowed to disclose to the court that the verdict had been arrived at in an illegal manner, and if he had been permitted to answer that there had been an agreement among the jurors in advance of arriving at the verdict, as to the manner in which it was to be determined, and that the agreement was that the verdict was to be reached by a calculation of the average of the estimates of individual jurors, this would have been in effect to allow the juror to impeach his own verdict. The usual way of polling the jury is to ask each individual juror whether he consented to the verdict, or, as it is usually put, "Is this your verdict?" If he says it is, and that he consented to it, the law closes his mouth as to the manner in which the verdict was arrived at, and its irregularities must be shown to the court by other evidence than that derived from the jurors themselves. If he answers that the verdict is not his, and he did not consent to it, he should not be interrogated as to his reasons for not consenting, and the verdict should not be received. We know no precedent in this State which would have justified the trial judge in granting the request of counsel for the defendant, and certainly it was no abuse of discretion to refuse to do so.

3. Nor do we think the assignment of error which complains of the admission of testimony of the plaintiff constituted any sufficient reason for granting a new trial. The plaintiff had testified in detail as to his conduct in reference to the transaction under investigation, and it necessarily follows, from his testimony, that there was nothing else he could have done to have kept the engine still while he was under it. All of the circumstances indicated that it was through no fault of his that the engine moved; and, while it was a question for the jury, upon the defense presented, as to whether or not the plaintiff was at fault, and whether or not the moving of the engine was due to his own negligence, still, under the facts testified to by the plaintiff, the jury would have been bound to find that he had done everything which he could have done to prevent the engine from moving. It was altogether harmless, therefore, to permit the plaintiff to testify in

the language complained of.   We find no error in the record, and
the judgment refusing a new trial must be              *Affirmed.*