A93A0564. HARRY S. PETERSON COMPANY, INC. v. NATIONAL UNION FIRE INSURANCE COMPANY.
(434 SE2d 778)

ANDREWS, Judge.

Appellant Harry S. Peterson Company, Inc. (Peterson) appeals from the order of the Fulton County Superior Court granting appellee National Union Fire Insurance Company's (National) motion to dismiss for lack of subject matter jurisdiction and improper venue.

Harvey Construction Company, Inc. (Harvey), a Maryland corporation, entered into a contract in Virginia with Fairfax County, Virginia, for the construction of a parking deck at a metro-rail station. This public project is located entirely within Fairfax County, Virginia. Pursuant to Virginia law, Harvey was obligated to obtain a surety bond naming appellee National as surety and Fairfax County as obligee; this payment bond was signed in Maryland. Thereafter, Harvey entered into a subcontract with appellant Peterson, a Michigan corporation, to perform certain work on the project. The subcontract was signed in Maryland. No documents were signed or work performed under this contract in the State of Georgia.

In its complaint against National, alleging, inter alia, breach of contract, Peterson alleged it had not been paid for the work performed on the project; that National was obligated to Peterson as a claimant under the terms of the payment bond; that the superior court had personal jurisdiction over the defendant National, subject matter jurisdiction, and venue. National, a Pennsylvania corporation, answered, admitting that it was a Pennsylvania corporation qualified to do business in Georgia and that its registered agent in Georgia was the person served.

The payment bond contains the following clause: "[n]o claim or action shall be commenced hereunder by any claimant . . . [o]ther

than in a state court of competent jurisdiction in and for the country [sic] or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated and not elsewhere."

1. The superior court had subject matter jurisdiction in this case in the "classic sense," as that concept is defined in *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208, 209 (1) (367 SE2d 43) (1988). See, e.g., Ga. Const. 1983, Art. VI, Sec. IV, Par. I; OCGA § 15-6-8. Superior courts in this state have jurisdiction over the *class* of cases to which this case belongs, that is, suits for breach of payment bond contract, bad faith claims under OCGA § 10-7-30, and attorney fees.

2. The trial court, without discussing the requirement for adequately raising the defense of personal jurisdiction or the issue of waiver, observed that National in its answer "denied that personal jurisdiction exists" and found a lack of personal jurisdiction over National. As the trial court unequivocally entertained the issue of personal jurisdiction, we consider this issue on appeal. Any issue of improper service, however, not having been expressly ruled on by the trial court and not raised by the parties is deemed abandoned. See *Frymyer v. State*, 179 Ga. App. 391 (3) (346 SE2d 573) (1986).

(a) The trial court concluded that due process concerns require dismissal of the suit for lack of personal jurisdiction, because there was a lack of minimum contact with Georgia so as to cause National reasonably to anticipate being hailed into court in Georgia; that there was insufficient evidence to establish whether the claim had any relation to or otherwise could have reasonably been expected to arise from minimum contacts; and that the exercise of jurisdiction in this case would not be reasonable and would violate notions of fair play and substantial justice. Underpinning these conclusions are the trial court's findings that the only connection alleged with the State of Georgia is that National "does substantial business here." Implicit in the trial court's disposition is a finding that National is not a "resident" of Georgia for personal jurisdictional purposes.

(b) The trial court rejected Peterson's contention that its claim under the payment bond constituted a transitory action and opined that "the controversy in this case does have a particular place where the contract is to be performed." The controversy is between Peterson and National as to liability under the bond and not between Peterson and Harvey regarding the subcontract. While the bond does contain the clause quoted supra, the bond document does not limit the situs where any required or good faith bond payments ultimately would be made or where execution might be effected of any final payments justly due thereunder.

"The term 'transitory action' comprehends in general those actions which at common law might be tried wherever personal service could be obtained upon the defendant. But if the cause of action is one that in its nature can arise in one place only, the action is local and suit can be brought only where the cause of action arose. In other words, an action is transitory where the transaction on which it is founded might have taken place anywhere; and it is local where the transaction is necessarily local, that is, could have happened only in a particular place. The distinction exists in the nature of the subject of the injury rather than in the means used or the place in which the cause of action arises." 77 AmJur2d, Venue, § 2. Peterson's claim is grounded upon a transitory rather than a local action. Compare *Walrus Mfg. Co. v. New Amsterdam Cas. Co.*, 184 FSupp. 214 (S.D. Ill. 1960) (action on performance bond was transitory); *Apartments, Inc. v. Trott*, 342 P2d 32, 36 (3) (DCA Calif. 1959) (performance bond a personal and transitory action); see also *Louisville &c. R. Co. v. Meredith*, 66 Ga. App. 488, 492 (18 SE2d 51) (1941) (at common law personal actions, whether arising ex contractu or ex delicto, are transitory and may be brought in a state other than where the cause of action arose), aff'd 194 Ga. 106 (21 SE2d 101) (1942).

The record establishes that National was doing substantial business in this state, although Peterson's claims did not arise from or out of the conduct of such business in Georgia. In Georgia, the following general rules apply regarding jurisdiction over foreign corporations as to transitory causes of action. "The general jurisdiction of State courts extends to transitory causes of action arising in another State, even though the plaintiff may not have been a resident of the State where the cause of action arose and the defendant may be a foreign corporation, so long as it is confined to the field from which the State itself is not excluded under the provisions of the United States constitution." *Louisville*, supra. A foreign corporation is present in any place where its officers or agents transact business in behalf of the corporation under authority conferred by it. *Reeves v. Southern R. Co.*, 121 Ga. 561, 565 (49 SE 674) (1905). A foreign corporation may be sued on a transitory cause of action in any jurisdiction where it can be found in the sense that service may be perfected upon an agent or officer transacting business for the corporation within that jurisdiction, and the residence of the plaintiff and the place at which the cause of action arises are not issues material to jurisdiction if the corporation can be found and served. *Reeves*, supra. "The true test of jurisdiction is not residence or non-residence of the plaintiff, or the place where the cause of action originated, but whether the defendant can be found and served in the jurisdiction where the cause of action is asserted." *Reeves*, supra at 563; *Louisville*, supra at 493; compare *Murphy v. John S. Winter & Co.*, 18 Ga. 690 (1855); *Hutto v.*

*Plagens*, 254 Ga. 512, 513 (1) (330 SE2d 341) (1985). "The jurisdiction of this state and its laws extend to all persons while within its limits, whether as citizens, denizens, or temporary sojourners." OCGA § 50-2-21. "Corporations are artificial persons," OCGA § 1-2-1 (b), and are persons within the meaning of OCGA § 50-2-21 (see *Louisville*, supra at 493-494 holding corporations are citizens for purposes of suit).

The above law does not offend either state or federal due process concepts. As a matter of federal due process, the business done by National in Georgia was sufficiently substantial and of such a nature as to permit Georgia to entertain the cause of action against it, though the cause of action arose from activities entirely distinct from its activities in Georgia. *Perkins v. Benguet &c. Mining Co.*, 342 U. S. 437, 447-449 (72 SC 413, 96 LE2d 485) (1952); compare *Burnham v. Superior Court of California Marin County*, 495 U. S. 604 (110 SC 2105, 109 LE2d 631) (1990) (plurality opinion), citing, inter alia, *Murphy*, supra at 691-692 and *Hutto*, supra at 513. In *Burnham*, supra at 619, four justices of the United States Supreme Court held that "[t]he short of the matter is that jurisdiction based on physical presence alone constitutes due process." The same plurality, citing *Perkins*, supra, recognizes that a special rule, based merely on " 'continuous and systematic' " contacts, may vest jurisdiction over corporations in addition to and apart from that traditional rule whereby jurisdiction is obtained by personal service upon a physically present defendant. *Burnham*, supra at 610, n. 1.

As above discussed, personal service of process is not at issue in this case. Accordingly, under either *Perkins* or *Burnham*, we are satisfied that jurisdiction duly vested, and that appellant's federal due process rights were not violated thereby.

Additionally, in *Allstate Ins. Co. v. Klein*, 262 Ga. 599 (422 SE2d 863) (1992), the Supreme Court of Georgia examined the definition of nonresident in the Georgia Long Arm Statute (OCGA § 9-10-90) and held that "a corporation which *is* 'authorized to do or transact business in this state at the time a claim' arises is a 'resident' for purposes of personal jurisdiction over that corporation in an action filed in the courts of this state. As a resident, such a foreign corporation may sue or be sued to the same extent as a domestic corporation." Id. at 601, n. 2 and accompanying text.

3. Peterson asserts that the trial court erred in applying Virginia law which restricted venue to the county in Virginia where the public construction project was situated and in enforcing the payment bond's forum selection or limiting clause.

(a) For the former premise, Peterson relies on *Tennessee Coal &c. R. Co. v. George*, 233 U. S. 354, 356 (34 SC 587, 58 LE 997) (1914). There, a workman at an Alabama plant was severely injured when a locomotive under which he was working moved because of a

defective throttle. He sued in Georgia, relying on an Alabama Statute which created a right of action making a master liable to an employee when injury was suffered due to defective machinery in the master's business. Further, the statute stated that all actions under it "must be brought in a court . . . within the State of Alabama and not elsewhere." The employer sought to abate the action because to ignore the forum limitation of the Alabama statute would violate the full faith and credit provisions of U. S. Const., Art. IV, Sec. I.

The Supreme Court found that "whether the statute be treated as prohibiting certain defenses, as removing common law restrictions or as imposing upon the master a new and larger liability, it is in either event evident that the place of bringing the suit is not part of the cause of action, — the right and the remedy are not so inseparably united as to make the right dependent upon its being enforced in a particular tribunal. The cause of action is transitory and like any other transitory action can be enforced 'in [the Georgia courts]'" and that "the sister State trying the case [Georgia] would be bound to give full faith and credit to all those substantial provisions of the statute which inhered in the cause of action or which name conditions on which the right to sue depend. But venue is no part of that right. . . ." Id. at 359-360.

In this case, however, more is involved than a statute of another state (Virginia) which purports by its terms to create a transitory action and then limit the locale for suit in violation of the U. S. Constitution. Here, there is an interstate transaction involving corporations of three different states, a public owner and project in another state, none of which is Georgia, and a dispute over contracts not signed in Georgia which contain a forum selection clause.

(b) The *Tennessee Coal* case[1] in no way indicates that two contracting parties may not, as a matter of contract, agree that a certain venue is appropriate and contractually required.

Here, the contract sued upon (bond) was entered into in Maryland by two parties, Harvey Construction Company (a Maryland corporation) and National Union Fire Insurance Company (a Pennsylvania corporation), to provide a benefit to specified claimants, including Peterson (a Michigan corporation), under certain conditions spelled out in the bond, including one limiting suit to the project situs, Virginia.

This situation is more factually similar to *The Bremen v. Zapata Off-Shore Co.*, 407 U. S. 1 (92 SC 1907, 32 LE2d 513) (1972). There, Zapata, a Houston, Texas corporation, contracted with Unterweser, a

---

[1] For a detailed discussion of this issue, see generally Congressional Obligation To Provide A Forum For Constitutional Claims: Discriminatory Jurisdictional Rules And The Conflict of Laws, 69 Va. L. Rev. 819-849 (1983).

German corporation owning The Bremen, to tow an ocean-going drilling rig to Italy. The contract contained this clause: "Any dispute arising must be treated before the London Court of Justice." The rig was damaged in a storm in the Gulf of Mexico and put into port at Tampa, Florida. There, Zapata filed its negligent towing claim seeking to recover the damages to its rig.

In upholding this forum selection contract clause,[2] the U. S. Supreme Court found that "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances. . . . This approach is substantially that followed in other common-law countries including England. It is the view advanced by noted scholars and that adopted by the Restatement of the Conflict of Laws. It accords with ancient concepts of freedom of contract and reflects an appreciation of the expanding horizons of American contractors who seek business in all parts of the world." (Footnotes omitted.) Id. at 10-11.

Peterson relies on *Fidelity &c. Co. of Maryland v. Gainesville Iron Works*, 125 Ga. App. 829 (189 SE2d 130) (1972) and *Cartridge Rental Network v. Video Entertainment*, 132 Ga. App. 748 (209 SE2d 132) (1974) for the proposition that all venue selection contract clauses are against Georgia public policy and will not be enforced by Georgia courts. However, both of these cases deal with intrastate transactions. *Cartridge*, which did not involve an insurance or bond claim, cited only *Fidelity* as authority for its holding that all venue selection clauses are violative of Georgia public policy. Despite the statement to the contrary in *Cartridge, Fidelity* can only be read as premising its conclusion regarding limitations on intrastate venue against insurers as violative of OCGA § 33-4-1, which provides for multiple venues for suit against insurers in Georgia, in direct contradiction to the contract clause in *Fidelity*. Therefore, I believe the language in *Cartridge* referring to "broad considerations of public policy against limiting venue by contract" should be disapproved.

When more than one state and its citizens are involved, as here, competing policy interests of this state come into play. In *Amica Mut. Ins. Co. v. Bourgault*, 263 Ga. 157 (429 SE2d 908) (1993), the issue was whether an automobile insurance policy delivered to a Georgia resident and purporting to cover only vehicles owned by the Georgia resident but registered and garaged in New York ran afoul of OCGA § 33-7-11 regarding uninsured motorist coverage. The Georgia resident sought to stack her New York vehicle coverage with coverage under a policy on her Georgia registered automobile in which she was

---

[2] For an in-depth discussion of this subject, see Validity Of Contractual Provision Limiting Place Or Court In Which Action May Be Brought, 31 ALR4th 404-445 (1984).

injured. Both policies were issued by Amica.

In upholding the New York policy's exclusion in light of this Georgia statute, the court stated that "[o]ur reading of this statute is supported by certain basic principles of fairness and comity set forth for the resolution of problems which arise when the laws of one state are in conflict with those of another state. One such principle is that the validity of and rights created by a liability insurance contract are to be determined by the law of the state which the parties understood to be the principal location of the insured risk during the term of the policy. [Cit.]" *Amica*, supra at 160 (2). The court concluded that to do otherwise would "be unfair and would deprive insurance companies of the degree of certainty necessary for determining the cost and extent of coverage." Id. In the present case, the principal location of the risk assumed by National under the bond is Virginia, the location of the project, and it is reasonable to assume the parties to the contract so anticipated.

This also carries out Georgia's rule of lex loci contractus. *Gen. Tel. Co. &c. v. Trimm*, 252 Ga. 95 (311 SE2d 460) (1984). The bond reflects that the contract for construction of the parking structure in Virginia "is by reference made a part hereof. . . ." While the bond was not finalized in Virginia, performance of the incorporated contract as well as the location of the risk assumed by the insurer and the contractually designated forum for resolution of conflicts regarding the construction project is Virginia.

Even if the contract venue selection provision differed from Georgia law with regard to interstate transactions, this does not, in itself, create such a public policy concern that precludes the application of another state's law, if that were necessary to decide here. *Commercial Credit Plan v. Parker*, 152 Ga. App. 409, 412 (1) (263 SE2d 220) (1979) (Georgia courts will enforce a South Carolina loan which would be deemed usurious under Georgia law).

This result also enhances the freedom to contract. " 'The "freedom of individuals to contract" is part of the basic liberties enjoyed by the citizens of this state and should not be interfered with in the absence of clear necessity.' [Cit.]" *Travelers Ins. Co. v. McNabb*, 201 Ga. App. 297, 301 (2) (410 SE2d 788) (1991). *Dacosta v. Allstate Ins. Co.*, 188 Ga. App. 10, 11 (372 SE2d 7) (1988).

Therefore, enforcing the validity of the contract's forum selection clauses does not offend the principles of *Fidelity*, supra.

4. This makes unnecessary our consideration of the argument premised on principles of forum non conveniens. We note, however, that under Georgia law, a trial court would abuse its discretion by dismissing a case on the grounds of forum non conveniens. Compare *Southern R. Co. v. Goodman*, 259 Ga. 339 (380 SE2d 460) (1989); *Gay v. Piggly Wiggly Southern*, 183 Ga. App. 175, 182 (4) (358 SE2d 468)

(1987); *Smith v. Bd. of Regents &c. of Ga.*, 165 Ga. App. 565 (302 SE2d 124) (1983).

*Judgment affirmed. Pope, C. J., Beasley, P. J., Cooper and Smith, JJ., concur. Birdsong, P. J., McMurray, P. J., and Blackburn, J., dissent. Johnson, J., not participating.*

BIRDSONG, Presiding Judge, concurring in part and dissenting in part.

1. I concur fully in Divisions 1 and 2 of the majority opinion, and with the conclusion in Division 4 thereof that under Georgia law, a trial court would abuse its discretion by dismissing a case on grounds of forum non conveniens.

2. I dissent as to Division 3.

(a) Appellant asserts the trial court erred in applying Virginia law which purported to restrict venue to the county in Virginia where the construction project was situated.

"The traditional method of resolving choice-of-law issues is through a tripartite set of rules, which are lex loci contractus, lex loci delicti, and lex fori. Under the rule of lex loci contractus, the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply. [Cit.] Under the rule of lex loci delicti, tort cases are governed by the substantive law of the state where the tort was committed. [Cit.] Under the rule of lex fori, procedural or remedial questions are governed by the law of the forum, the state in which the action is brought." *Fed. Ins. Co. v. Nat. Distrib. Co.*, 203 Ga. App. 763, 765 (417 SE2d 671).

In *Biddinger v. Fletcher*, 224 Ga. 501, 504 (162 SE2d 414), it was held that, as between counties in the same jurisdiction, venue statutes relate to procedure, not jurisdiction. Compare *Hatfield v. Leland*, 143 Ga. App. 528 (239 SE2d 169). If venue is a matter of procedure in this case then under the rule of lex loci fori, procedural questions are determined by the law of the forum. However, interstate venue (venue between different counties) is a jurisdictional matter whereas municipal venue (venue between different places in the same jurisdiction) generally is a procedural matter. *Tennessee Coal &c. R. Co. v. George*, 233 U. S. 354, 356 (34 SC 587, 58 LE 997). The question of venue among sovereign states is thus jurisdictional rather than procedural. *Tennessee Coal*, supra, 233 U. S. at 356, 360. Nevertheless, the law of the forum state, in this instance Georgia, would still apply. In *Tennessee Coal*, supra, 233 U. S., the United States Supreme Court affirmed our judgment in *Tennessee Coal &c. R. Co. v. George*, 11 Ga. App. 221 (75 SE 567), holding: "The courts of the sister [s]tate trying

the case would be bound to give full faith and credit to all those substantial provisions of the statute which inhered in the cause of action or which name conditions on which the right to sue depend. *But venue is no part of the right*; and a [s]tate cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction. *That jurisdiction is to be determined by the law of the [forum] court's creation* and cannot be defeated by the extraterritorial operation of a statute of another [s]tate, even though it created the right of action." (Emphasis supplied.) *Tennessee Coal*, supra, 233 U. S. at 360; see also *Nailen v. Ford Motor Co.*, 690 FSupp. 552, 556, n. 3 (D.C. S.D. Miss.). Thus, the United States Supreme Court concluded "a transitory cause of action can be maintained in another [s]tate even though the statute creating the cause of action provides that the action must be brought in local domestic courts." *Tennessee Coal*, supra, 233 U. S. at 361. In *Slaton v. Hall*, 172 Ga. 675, 682-683 (3) (158 SE 747), our Supreme Court cited and applied the holdings of the United States Supreme Court and our court in the *Tennessee Coal* cases, and held that the trial judge did not err in striking an amendment to defendant's answer which asserted that under Alabama law the plaintiff could sue upon a transitory cause of action only in Alabama. Accordingly, we find that Virginia could not lawfully preclude, by its statutes, the State of Georgia from exercising its own jurisdiction and applying its own rules of law in determining venue (whether venue is classified procedural in nature or, as interstate venue and jurisdictional within the meaning of *Tennessee Coal*, supra, 233 U. S.).

(b) Appellant asserts the trial court erred in enforcing the payment bond's forum selection or limiting clause. The payment bond pertinently provided: "3. No suit or action shall be commenced hereunder by any claimant . . . (c) other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere."

Pretermitting whether this issue generally would be determined under the rule of lex loci contractus, thereby causing Virginia law to be applied, is whether the forum limiting clause in this contract would violate Georgia public policy. "The comity of [s]tates would not require the courts of this [s]tate to enforce a cause of action when to do this would be contrary to the established policy of the [s]tate." *Reeves v. Southern R. Co.*, 121 Ga. 561, 565 (49 SE 674). Thus, even if an application of the traditional tripartite set of rules pertaining to the methods of resolving choice-of-law issues "renders the law of another state applicable, the forum, within constitutional limits, is not required to give the law of another state extra[-]territorial effect.

That is only done as a matter of courtesy or comity, *which will not be enforced if the law of the other state contravenes the public policy of the forum.*" (Emphasis supplied.) *Fed. Ins. Co.,* supra at 766. *Commercial Credit Plan v. Parker,* 152 Ga. App. 409, 412-413 (263 SE2d 220) is distinguishable and not controlling; in *Commercial Credit* we concluded the Georgia Industrial Loan Act did not express a public policy as to a Georgia borrower but rather expressed public policy toward the assiduous regulation of and compliance by those who make certain loans in Georgia, thereby allowing the South Carolina law to be applied as a matter of comity. Notwithstanding the laws of other jurisdictions, in Georgia a provision of a contract fixing the venue of an action on the contract as to future litigation (venue limiting provision) is void, as contrary to public policy. *Cartridge Rental Network v. Video Entertainment,* 132 Ga. App. 748 (209 SE2d 132); *Fidelity &c. Co. of Maryland v. Gainesville Iron Works,* 125 Ga. App. 829 (189 SE2d 130); *Davis v. Aetna Cas. &c. Co.,* 696 FSupp. 634, 640, n. 4. (D.C. N.D. Ga.). Such venue limiting provisions are unenforceable in Georgia. Id. Moreover, the public policy discussed in *Fidelity &c. Co.,* supra, a case containing a venue limiting clause substantially the same as the venue limiting clause in the case at bar, "was not solely confined to the statute therein involved but was based on broad considerations of public policy against limiting venue by contract" (*Cartridge,* supra). Accordingly, I can only conclude that the venue limiting clause in the payment bond contract is against Georgia public policy and unenforceable in our courts. The majority would disapprove the language in *Cartridge* and ignore the persuasive language in *Davis,* supra; with this I cannot agree.

(c) As tacitly recognized by the majority, appellee skillfully importuned this court to apply certain legal principles, which actually apply to the doctrine of forum non conveniens, in the disposition of the appellate issues before this court. Other jurisdictions apply this doctrine, and on occasion it can be a great boom to judicial economy. Nevertheless, Georgia courts are not at liberty to apply this doctrine, and are obligated to liberally interpret the law so as to maximize the jurisdictional reach of the protective arms of our judicial system. The majority correctly recognizes that under existing Georgia law, a trial court would abuse its discretion by dismissing a case on the grounds of forum non conveniens. Compare *Southern R. Co. v. Goodman,* 259 Ga. 339 (380 SE2d 460); *Gay v. Piggly Wiggly Southern,* 183 Ga. App. 175, 182 (4) (358 SE2d 468); *Smith v. Bd. of Regents &c. of Ga.,* 165 Ga. App. 565 (302 SE2d 124). Although occasionally an anomaly may result wherein a case is litigated in Georgia which perhaps could have been litigated more conveniently elsewhere, our jealous protection of our jurisdiction has withstood the test of time and has proven to be in the long-term best interests of the citizens of this state and entirely

compatible with the constitutional right of access to our courts (see, e.g., Ga. Const. 1983, Art. I, Sec. I, Par. XII; OCGA § 1-2-6 (6)).

Likewise, cogent public interest considerations support the retention of a public policy which broadly rejects the limiting of venue by contract. While the immediate effect of the majority's decision is to aid judicial economy, I am concerned that, if their judgment stands, a large number of persons in our state will have no genuine future choice but to accede to unfavorable venue selection clauses placed in contracts by those occupying unequal, superior bargaining positions.

Accordingly, I respectfully dissent as to Division 3.

I am authorized to state that Presiding Judge McMurray and Judge Blackburn join in this dissent.

DECIDED JULY 16, 1993.

*Weisz & Port, Peter R. Weisz, Robert C. Port*, for appellant.
*Hotz & Associates, J. Tyler Tippett*, for appellee.