John E. EISAMAN, et al.

v.

CINEMA GRILL SYSTEMS, INC., et al.

No. CIV. A. DKC 99–1836.

United States District Court, D. Maryland.

Nov. 19, 1999.

---

Monroe Jon Mizel, Law Office, Kensington, MD, for Plaintiffs.

Robert N. Levin, PC, Rockville, MD, for Defendants.

### *MEMORANDUM OPINION*

CHASANOW, District Judge.

In this action alleging, *inter alia,* breach of a franchising agreement and violations of Maryland's Franchise Registration and Disclosure Law, Defendant Cinema Grill Systems, Inc. ("CGS") has moved pursuant to Fed.R.Civ.P. 12(b)(3) to dismiss for improper venue or, in the alternative, to transfer this action to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). The primary basis for Defendant's motion is a forum-selection clause in the franchising agreement. The issues have been fully briefed. No hearing is deemed necessary, and the court now rules pursuant to Local Rule 105.6. For the reasons set forth below, the court shall GRANT the motion to dismiss and DISMISS the claims against CGS without prejudice to re-filing in the contractual forum.

### I. *Background*

Plaintiffs John and Connie Eisaman are residents of Virginia. Plaintiff Metro Re-

creation, Inc., which is owned by the Eisamans, is organized under the laws of Virginia. CGS has its principal place of business in Georgia. According to Plaintiffs' complaint, Defendant J. Ramsey Contracting, Inc. ("JRC") has its principal place of business in Ohio, and Defendant Joey Ramsey ("Ramsey") is a resident of Ohio.

CGS is in the business of franchising theater-restaurants. Plaintiffs and CGS entered into a Franchise License Agreement ("Franchise Agreement") pursuant to which Plaintiffs would operate a CGS franchise in Montgomery Village, Maryland. Plaintiffs subsequently entered into a contract with JRC to provide design and build-out services at the proposed franchise location. Plaintiffs' engagement of JRC is alleged to have been at the urging of CGS.

Plaintiffs initiated this action after CGS allegedly breached its duty under the Franchise Agreement to advise and assist Plaintiffs with regard to the design and build-out process. The complaint also alleges that CGS violated numerous provisions of Maryland's franchise law. In addition, Plaintiffs allege that JRC breached the construction contract, and that JRC and Ramsey engaged in fraud. CGS filed the presently pending motion to dismiss on the basis of the forum-selection clause in the Franchise Agreement.

1. Defendant CGS has moved in the alternative to transfer venue pursuant to 28 U.S.C. § 1404(a). When a forum-selection clause is asserted as the basis for a motion to transfer under § 1404(a), its validity and effect are governed by federal law regardless of the basis for the court's subject-matter jurisdiction. A § 1404(a) motion to transfer requires the court to apply the analysis set forth by the Supreme Court in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (holding that "[a] motion to transfer under § 1404(a) ... calls on the district court to weigh in the balance a number of case-specific factors," including the presence of a forum-selection clause, but stating that such a clause should not receive dispositive consideration).

## II. *Analysis*

The law governing the enforceability of forum-selection clauses in the context of a motion to dismiss depends on the nature of the underlying action.[1] In federal question cases, the validity and effect of forum-selection clauses is controlled by federal law. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In diversity cases, however, the Fourth Circuit applies state law to determine enforceability. *See Nutter v. New Rents, Inc.*, 945 F.2d 398, 1991 WL 193490, at *5–6 (4th Cir. Oct. 1, 1991) (unpublished table decision).[2] Generally, a district court determines which state's law governs by applying the conflicts of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In this case, however, the parties have agreed that the Franchise Agreement is to be construed and enforced in accordance with the law of Georgia. Therefore, the enforceability of the forum-selection clause is governed by Georgia law. *See Nutter*, 1991 WL 193490, at *5–6, 945 F.2d 398 (applying law of state designated in choice-of-law clause to determine enforceability of forum-selection clause); *Diaz Contracting, Inc. v. Nanco Contracting Corp. (In re Diaz Contracting, Inc.)*, 817 F.2d 1047, 1050 (3d Cir.1987) (same).[3]

2. There is a circuit split as to whether state or federal law governs in diversity cases. *Compare Farmland Indus., Inc. v. Frazier–Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir.1986) (holding that state law governs), *and General Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356–57 (3d Cir. 1986) (same), *with Haynsworth v. The Corporation*, 121 F.3d 956, 962 & n. 11 (5th Cir. 1997) (holding that federal law governs), *and Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir.1990) (same), *and Jones v. Weibrecht*, 901 F.2d 17, 18 (2d Cir. 1990) (same), *and Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) (same).

3. Even in the absence of the choice-of-law clause in the Franchise Agreement, conflicts

■ The Georgia courts have adopted the federal law standard announced by the Supreme Court in *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), for analyzing the enforceability of forum-selection clauses.[4] *Antec Corp. v. Popcorn Channel, L.P.,* 225 Ga.App. 1, 482 S.E.2d 509, 510 (1997); *Harry S. Peterson Co. v. National Union Fire Ins. Co.,* 209 Ga.App. 585, 434 S.E.2d 778, 782–83 (1993). In *Bremen,* the Supreme Court held that forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen,* 407 U.S. at 10, 92 S.Ct. 1907. Enforcement is unreasonable only when (1) agreement to the forum-selection clause was induced by fraud or overreaching, (2) "enforcement would contravene a strong public policy of the forum in which suit is brought," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of his day in court." *Id.* at 12–19, 92 S.Ct. 1907.

■ Prior to conducting the *Bremen* analysis, the court must determine whether the forum-selection clause at issue is mandatory or permissive. If the clause is merely permissive, the action will not be dismissed; if mandatory, it will be enforced as required by *Bremen.* *See Florida Polk County v. Prison Health Servs., Inc.,* 170 F.3d 1081, 1083 n. 8 (11th Cir. 1999); *Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 979 (2d Cir. 1993); *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 956–57 (5th Cir.1974) (per curiam).

■ The Franchise Agreement provides:

All claims, causes of action, liabilities, and suits relating to the negotiation, formation, construction, interpretation, performance, or enforcement of this Agreement will be governed by and construed in accordance with Georgia law. At our [CGS] option, jurisdiction and venue for all litigation, arbitration, and mediation related to this Agreement will be proper only in the United States District Court, Northern District of Georgia, Atlanta Division, or the Superior Court of Fulton County, Georgia, depending upon which court has subject matter jurisdiction. You [Plaintiffs] consent to the exercise of in personam jurisdiction by courts.

Plaintiffs argue that the mere reservation by CGS of the power to choose whether claims will be litigated in the designated fora cannot be interpreted as a mandatory limitation on venue. The court disagrees.

Courts addressing similarly phrased forum-selection clauses have found them to be mandatory. In *Snapper, Inc. v. Redan,* 171 F.3d 1249 (11th Cir.1999), the court found the following forum-selection clause to be mandatory:

The Undersigned agrees that any legal action or proceeding with respect to this instrument may be brought in the courts of the State of Georgia or the United States District Court, Northen District

---

of law principles would require this court to apply Georgia law. Maryland's traditional contract conflict rule is *lex loci contractus,* which holds that the construction and validity of a contract is governed by the law of the state where the contract was made. *American Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 570–73, 659 A.2d 1295, 1300–01 (1995). For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs. *Commercial Union Ins. Co. v. Porter Hayden Co.,* 97 Md.App. 442, 451, 630 A.2d 261, 266 (1993), *vacated on other grounds,* 339 Md. 150, 661 A.2d 691 (1995). In this case, that act occurred in Georgia when CGS ratified the Franchise Agreement. Thus, Georgia law would apply.

4. Maryland and Virginia, the other states to which this controversy has a connection, have also adopted the *Bremen* standard for analyzing the enforceability of forum-selection clauses. *Gilman v. Wheat, First Securities, Inc.,* 345 Md. 361, 371–78, 692 A.2d 454, 459–63 (1997); *Paul Business Systems, Inc. v. Canon U.S.A., Inc.,* 240 Va. 337, 397 S.E.2d 804, 807 (1990).

**450**

of Georgia, Atlanta Division, *all as Creditor may elect.*

*Id.* at 1260 (emphasis added). In holding that it was mandatory, the court stated:

> [T]he provision at issue in this case gives [Plaintiff] an absolute right to choose the forum. The contract may be considered "permissive" in that it specifically allows [Plaintiff] to select the Georgia state courts, the federal district court for the Northern District of Georgia, or any other appropriate jurisdiction. The contract is mandatory as to the [Defendants], however, because it requires an absolute submission by them to the jurisdiction of whichever of these fora that [Plaintiff] chooses.

*Id.* at 1262 n. 24.

In *CQL Original Products, Inc. v. NHL Players' Association,* 39 Cal.App.4th 1347, 46 Cal.Rptr.2d 412 (1995), the court found the following forum-selection clause to be mandatory: "[A]ny claims arising hereunder shall, at the Licensor's election, be prosecuted in the appropriate court of Ontario." *Id.* at 414. The plaintiff licensee in *CQL* initiated an action in California state court against the defendant licensor for breach of a licensing agreement. The defendant moved to dismiss on the basis of the forum-selection clause. Plaintiff argued that the forum provision was ambiguous because "although it might allow [Defendant] to elect to prosecute its own actions in Ontario, it does not unequivocally mandate [Plaintiff] prosecute its claims against [Defendant] exclusively in Ontario." The court rejected this argument and held the clause to be mandatory, noting that the provision referred to *"any* claims arising hereunder," not just those instituted by the licensor, and finding that use of the word "shall" required prosecution of any claims in Ontario upon the licensor invoking the clause. *Id.* at 418–19 (emphasis added).

The instant action is indistinguishable from *CQL.* The forum-selection clause refers to *"all* litigation, arbitration, and mediation related to" the franchising agreement. Moreover, it provides that venue for *all* such litigation shall be proper *only* in one of the designated fora, at CGS' election. *See Kachal, Inc. v. Menzie,* 738 F.Supp. 371, 373–74 (D.Nev.1990) ("Mandatory forum selection clauses contain language such as 'exclusive' or 'only.' The language mandates that the designated courts are the only ones which have jurisdiction." (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77–78 (9th Cir.1987))). That CGS has discretion under the contract to decide whether it will require litigation in the Georgia courts does not alter the mandatory nature of the clause. Accordingly, the court holds that the forum-selection clause at issue is mandatory.

■ Having determined that the clause is mandatory, the court must decide whether enforcement would be "unreasonable." The complaining party bears a heavy burden of demonstrating unreasonableness. *Bremen,* 407 U.S. at 15, 92 S.Ct. 1907 ("[T]he forum clause should control absent a strong showing that it should be set aside."); *see Carnival,* 499 U.S. at 592, 111 S.Ct. 1522 ("The party claiming [unfairness] should bear a heavy burden of proof."). Again, enforcement is deemed unreasonable only when (1) agreement to the forum-selection clause was induced by fraud or overreaching, (2) "enforcement would contravene a strong public policy of the forum in which suit is brought," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of his day in court." *Bremen,* 407 U.S. at 12–19, 92 S.Ct. 1907.

■ Plaintiffs first argue that the clause should not be enforced because it was not freely negotiated by parties with equal bargaining power; rather, it was imposed on unsophisticated individuals who had little business experience. The fact that a forum-selection clause is part of a form contract presented by a party with superior bargaining power on a "take-it or leave-it" basis does not render the clause unenforceable. *See Carnival,* 499 U.S. at

593–94, 111 S.Ct. 1522; *Fleming & Hall, Ltd. v. Cope,* 30 F.Supp.2d 459, 464 (D.Del. 1998); *Smith v. Professional Claims, Inc.,* 19 F.Supp.2d 1276, 1280 (M.D.Ala.1998). However, inclusion of the clause is "subject to judicial scrutiny for fundamental fairness." *Carnival,* 499 U.S. at 594–95, 111 S.Ct. 1522. In this case, there is no indication that the Georgia fora were designated in a bad-faith attempt to discourage franchisees from pursuing legitimate claims against CGS. *See id.* Rather, they were selected because CGS' principal place of business is in Georgia. Additionally, there is no evidence that consent to the forum-selection clause was obtained by fraud or overreaching. *See id.*

■■■■ Furthermore, Mr. Eisaman's statement in his affidavit that he "never noticed the alleged mandatory forum clause" and never discussed it with CGS will not render the clause unenforceable. The fact that Mr. Eisaman failed to notice the provision does not mean he did not have notice of it. Under Georgia law, one who signs a written document is charged with knowledge of its contents unless prevented from reading it by some fraud or artifice, which is not alleged here. *Musgrove v. Musgrove,* 213 Ga. 610, 100 S.E.2d 577, 579 (1957). Mr. Eisaman's affidavit indicates that he is a well-educated individual, possessing a Bachelor of Science degree from the United States Naval Academy and a Masters of Business Administration from the University of Pittsburgh. He also states that he has written numerous papers on the topic of logistics, and even co-authored a book on the subject. He is a Certified Professional Logistician and has passed Pennsylvania's Professional Engineer examination. Certainly this is evidence that he possesses a level of sophistication that would permit him to read the Franchise Agreement and understand the import of the forum clause. If he failed to carefully read the agree-

ment before signing it, he did so at his own peril.

The court finds that Plaintiffs had reasonable notice of the forum provision, that CGS did not designate the fora in bad-faith, and that there was no fraud or overreaching in obtaining consent to the clause. The court therefore holds that inclusion of the forum-selection clause in the Franchise Agreement did not offend traditional notions of fundamental fairness. *See Carnival,* 499 U.S. at 595, 111 S.Ct. 1522.

■■■■ Finally, Plaintiffs argue that enforcement of the forum clause would be unreasonable because it would be seriously inconvenient for them to litigate this case in Georgia.[5] In support of this claim, Plaintiffs make the following allegations: 1) all of Plaintiffs' non-party witnesses are located in the Washington, D.C. metropolitan area; 2) it is necessary that the trier of fact physically inspect the proposed franchise location; and 3) "the expense of long distance litigation would be prohibitive, effectively closing the doors to the courthouse [for Plaintiffs]."

Plaintiffs, however, have provided no evidence to support their allegations. They have not provided the names of the witnesses they claim will be unavailable if the forum clause is enforced, nor do they describe the nature or importance of these witnesses' testimony. *See Haskel v. FPR Registry, Inc.,* 862 F.Supp. 909, 917 (E.D.N.Y.1994). Furthermore, they do not explain why these witnesses could not provide deposition testimony. *See id.; Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1279 (S.D.N.Y. 1992). Plaintiffs' claim that the trier of fact would need to inspect the franchise location is conclusory and not supported by an articulation of reasons why this would be necessary, and why photographs or videotape would not suffice. Similarly, their claim that the cost of litigating in Georgia would be prohibitive is unsupported by any

5. Plaintiffs do not contend that enforcement of the forum-selection would contravene a strong public policy of this forum.

evidence. Plaintiffs have provided no evidence of their financial condition, nor have they provided an estimate of how much more it would cost to try the case in Georgia than in Maryland. While the court is willing to accept the contention that prosecuting this action in Georgia will be more expensive for Plaintiffs than doing so in Maryland, these increased expenses are inherent in a forum-selection clause. That litigation will be more expensive for one party than another is not a reason for declaring the clause invalid. *See Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1138–39 (6th Cir.1991).

Plaintiffs have simply failed to provide a basis for this court to find that trial in Atlanta "will be so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court." *Bremen*, 407 U.S. at 17–18, 92 S.Ct. 1907. Mere allegations of "serious inconvenience" are insufficient to meet the "heavy burden" of showing why enforcement would be unreasonable. The court finds that enforcement of the clause is reasonable and shall DISMISS the claims against CGS without prejudice to the filing of a new action in the contractual forum.

A separate order will be entered.

### ORDER

In accordance with the accompanying Memorandum Opinion, IT IS this ＿＿ day of November, 1999, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant Cinema Grill Systems, Inc.'s Motion to Dismiss BE, and hereby IS, GRANTED;

2. The claims against Defendant Cinema Grill Systems, Inc. BE, and hereby ARE, DISMISSED without prejudice to the filing of a new action in the contractual forum; and

3. The Clerk is directed to mail a copy of this Order and the accompanying Memorandum Opinion to counsel for the parties.